IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT


-------------------------------------------------------x
              :

RICHARD M. COAN, TRUSTEE, et al.    :

              :          3: 15 CV 50 (JAM)

              :

v.                  :

              :

SEAN DUNNE, et al.         :          DATE: DEC. 18, 2018

              :

-------------------------------------------------------x


RULING ON MOTION TO COMPEL (DOC. NO. 64)

I.    BACKGROUND

The genesis of this case lies in a judgment entered by the High Court of Ireland on March 9, 2012, in the amount of €185,299,627.78 against Sean Dunne and in favor of National Asset Loan Management, LLC ["NALM" or "NAMA"].  On July 11, 2012, NALM commenced a civil action in the Connecticut Superior Court to, *inter alia*, avoid fraudulent transfers, require an accounting of assets transferred, require disgorgement of certain transferred assets, impress the transferred assets with a constructive trust for the benefit of a creditor of Sean Dunne, and for related relief.  *See NALM v. Dunne et al.*, Conn. Super. Ct. C.A. No. FST0CV1205013922-S ("State Court Action").[1]  Several discovery disputes arose during the course of discovery in the State Court Action, and on March 29, 2013, the defendant Sean Dunne filed a petition for relief under Chapter 7 of the United States Bankruptcy Code, *In re Sean Dunne*, Bankruptcy Case No. 13-50484 (AHWS) ("Bankruptcy Case"), and the Superior Court case was stayed.  Richard M.

---

[1] The named defendants are Dunne, Gayle Killilea (Dunne's wife), Mountbrook USA, LLC, Molly Blossom LLC, Barclay Beattie & Brown LLC, WAHL, LLC, Thomas J. Heagney, Esq., John J. Slane, Jr., Esq., and Heagney, Lennon & Slane, LLP (collectively "defendants").  All defendants are alleged to be residents of Connecticut.

Coan is serving as the Trustee of Sean Dunne's bankruptcy estate. On June 4, 2013, the Bankruptcy Court granted Ulster Bank a relief from the stay to serve Dunne with an involuntary bankruptcy petition in Ireland. Dual bankruptcy actions proceeded – here and in Ireland.

Based on testimony from Dunne taken during the Bankruptcy Case, NALM commenced an adversary proceeding on July 8, 2013 objecting to Dunne's discharge pursuant to 11 U.S.C. §§ 727(a)(4) (False Oaths) and 727 (a)(2)(A) (Removal, Transfer and/or Concealment of Assets). *NALM v. Dunne*, Bankr. D. Conn. Adv. Proc. Case No. 13-05033. The gravamen of NALM's complaint in the adversary proceeding was Dunne's concealment and transfer of assets through Gayle Killilea and other persons and entities in hinderance of his creditors. Discovery proceeded in that action, with extensive motion practice through August 2014. On August 20, 2014, Dunne moved to dismiss his Chapter 7 Bankruptcy Case, to which the Trustee objected, citing Dunne and Killilea's failure to participate in discovery. NALM rescheduled the pending discovery motions which had been stayed because of Dunne's motion to dismiss. Dunne then withdrew his motion to dismiss and, on December 10, 2014, voluntarily waived his discharge by entry of an Order of the Bankruptcy Court, which rendered the adversary proceeding and the discovery motions therein moot.

On January 12, 2015, the Trustee removed the State Court Action to this court (Doc. No. 1); thereafter, United States District Court Judge Jeffrey Alker Meyer granted the Trustee's Motion to Intervene as Party Plaintiff and denied defendant Killilea's Motion for Remand. (Doc. No. 38). No action occurred in this case over the next two years. During that time, on March 29, 2015, the Trustee commenced an adversary proceeding in the Bankruptcy Court, *Coan, Trustee v. Gayle Killilea, et al.*, Adversary Proceeding No. 15-5019 ("Adversary Proceeding"),

in which the parties engaged in discovery and other pretrial proceedings. (*See* Doc. Nos. 39-40, 43).

The gravamen of the Trustee's case against the defendants is the avoidance of various transfers and the concealment of assets made by Sean Dunne to and through related persons and entities, including the defendants, with the intent to hinder, delay or defraud his creditors. Dunne contends that he transferred ownership of certain assets to defendant Killilea and others prior to the bankruptcy and the look back period. The Trustee alleges that the alleged transfers occurred for no consideration, at a time when Dunne was insolvent and for the sole purpose of defeating creditor claims. The defendants are the recipients of Dunne's alleged transfers.

On September 11, 2018, this case was consolidated with the Adversary Proceeding. (Doc. Nos. 50-52). On October 30, 2018, the Trustee filed, *inter alia*, the pending Motion to Compel (Doc. No. 64) in which the Trustee seeks documents and information that it contends "are already the subject of prior orders in both the Connecticut Superior Court and the Adversary Proceeding[,]" in response to which the defendants filed their objection on November 9, 2018. (Doc. No. 78). On November 16, 2018, the Court held a motion hearing to address the "motions or other discovery matters that remain of consequence" from the Adversary Proceeding (Doc. No. 59), including this pending Motion to Compel.

Following oral argument, during which the Court noted that it would need a "much more detailed recitation of exactly what it is that's believed to be deficient[,]" (Doc. No. 99 at 29), the Court referred the Trustee's Motion to Compel to this Magistrate Judge and ordered the Trustee to file "a proposed order and detailed itemization of the alleged deficiencies in defendants' document production within the scope of the allegations in the existing motion to compel." (Doc.

No. 82; *see* Doc. No. 83; *see also* Doc. 99 at 40-41). The Court then set a December 21, 2018 deadline for the Trustee to disclose its expert report and damages analysis.

On November 26, 2018, the Trustee filed an Itemization of Categories of Discovery Requested by the Trustee and Deficiencies in Defendants' Response Thereto ["Itemization"], and a Proposed Order on Trustee's Motion to Compel Discovery Responses and to Overrule Defendants' Privilege Objections. (Doc. No. 90, Exs. A-B). In the Itemization, the Trustee lists 23 categories of documents. (Doc. No. 90, Ex. A at 2-6). On November 30, 3018, this Magistrate Judge held a telephonic conference regarding the Trustee's submission, during which the defendants argued that this Itemization did not comply with the November 16, 2018 Order. The defendants represented that they would produce additional documents, but needed more information as to the documents the Trustee claimed were missing. The Trustee agreed to revise its Itemization to specify, more particularly, the documents he was requesting, and the defendant agreed to file a response to the revised submission.

On December 5, 2018, the Trustee filed his Supplemental Itemization of Categories of Discovery Requested by Trustee and Deficiencies in Defendants' Response Thereto. (Doc. No. 109). On December 11, 2018, the defendants filed their brief in opposition in which they argue that the Trustee's supplementation has expanded rather than narrowed the focus of the discovery requests. (Doc. No. 120). On December 13, 2018, the Trustee filed his reply brief. (Doc. No. 125).

For the reasons set forth below, the Trustee's Motion to Compel (Doc. No. 64) is *granted in part and denied in part*.

II.    LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations

of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant
> to any party's claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to the relevant information, the parties'
> resources, the importance of the discovery in resolving the issues, and whether the
> burden or expense of the proposed discovery outweighs its likely benefit.
> Information within this scope of discovery need not be admissible in evidence to
> be discoverable.

FED. R. CIV. P. 26(b)(1).  The advisory committee's notes to the 2015 amendment of Rule 26

further explain that

> [a] party claiming that a request is important to resolve the issues should be able
> to explain the ways in which the underlying information bears on the issues as that
> party understands them.  The court's responsibility, using all the information
> provided by the parties, is to consider these and all the other factors in reaching a
> case-specific determination of the appropriate scope of discovery.

FED. R. CIV. P. 25 advisory committee's note to 2015 amendment.

"[T]o fall within the scope of permissible discovery, information must be 'relevant to any

party's claim or defense.'  In order to be 'relevant' for Civil Rule 26 discovery purposes,

information and evidentiary material must be 'relevant' as defined in Rule of Evidence 401."

*Bagley v. Yale Univ.,* No. 3:13 CV 1890 (CSH), 2015 WL 8750901, at *8 (D. Conn. Dec. 14,

2015); *see* FED. R. CIV. P. 26(b)(1), advisory committee notes to the 2015 amendments.

"Discovery, however, 'is concerned with 'relevant information'—not 'relevant evidence'—and

that as a result the scope of relevance for discovery purposes is necessarily broader than trial

relevance.'"  *A.M. v. Am. Sch. for the Deaf*, No. 3:13 CV 1337 (WWE), 2016 WL 1117363, at *2

(D. Conn. Mar. 22, 2016) (quoting Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules

and Commentary Rule 26, V. Depositions and Discovery (February 2016 Update) (footnotes omitted). "The Court 'must limit' discovery otherwise allowed if the discovery sought is 'unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]'" *Family Wireless #1, LLC v. Auto. Techs., Inc.*, No. 3:15 CV 01310 (JCH), 2016 WL 3911870, at *2 (D. Conn. July 15, 2016) (*quoting* FED. R. CIV. P. 26(b)(2)(C)(i)).

III.    DISCUSSION

    A.    ITEMIZATION NO. 1 – NEWINVEST

The Trustee seeks documents responsive to his Document Request No. 69 to Killilea and Document Request No. 51 to John Dunne, in which the Trustee requests as follows:

> Request No. 69: Documents and communications between you and Newinvest concerning any loans or mortgage advanced by or granted to Newinvest, including, but not limited to, any loan closing files, mortgage, and any bank records showing the receipt or disposition of monies related thereto.

> Request No. 51: Any application for financing you prepared or submitted on behalf of TJD 21.

In its Supplemental Itemization, the Trustee requests as follows:

1. Documents and communications concerning the capitalization of Newinvest Holding International Ltd. ("Newinvest"), including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

2. Documents and communications concerning the source of funds used by Newinvest to make loans to the Defendants, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

3. Documents and communications concerning the ownership of Newinvest, including, but not limited to, any stock ledger, schedule of beneficiaries, membership interests or other documents identifying the owners.

4. Documents concerning the domicile of Newinvest, Totalserve and/or Line Trust Corporation Ltd.

5. Documents and communications concerning any loan to Newinvest, including, but not limited to, Killilea's loan of $1.8 million to Newinvest and the source of funds for such loan.

6. Communications between or among the Defendants and Newinvest.

7. Communications between the Defendants and Sean Dunne, James Ryan, Ross Connolly, Roy Abramowitz, Jospeh Leshkowitz, Hassans International Law Firm, Line Trust Corporation Ltd., Totalserve or any third party concerning Newinvest.

8. Documents and communications concerning the $25,000,000.00 loan facility that Killilea made available to Line Trust Corporation Ltd. and the source of funds for such loan facility.

(Doc. No. 109 at 2-3).

At oral argument before the Court on November 16, 2018, the Trustee argued that the documents related to Newinvest are relevant because Newinvest, which is a lender, is an entity formed by the Hassan Law Firm, and managed by Totalserve. Once Newinvest received funds from the Dunne family, it then lent money to other Dunne-controlled entities (ex: to TJD21, to an entity that owned 42 Bote Road, to defendant Wahl LLC). (Doc. No. 99 at 23). Additionally, defendant Mountbrook USA transferred significant funds to Newinvest after the bankruptcy case was filed. (Doc. No. 99 at 24-25). The Trustee represented that it is requesting documents from Newinvest dating back to the time it was formed in 2007-2008. (Doc. No. 99 at 25).

At oral argument, the defendants agreed to make "additional disclosure on Newinvest." (Doc. No. 99 at 37). Now in their response to the Trustee's Supplemental Itemization, the defendants argue that they produced "all Newinvest loan agreements and have provided a supplemental production including incorporation documents and client account records." (Doc. No. 120 at 4). In his reply, the Trustee notes that, on December 11, 2018, the defendants, "produced for the first time highly relevant documents demonstrating that Killilea was the direct

source of the Newinvest funds used to fund the Dunnes' various real estate projects[,]" and that the defendants failure to produce this information earlier is "sheer obstructionism."  (Doc. No. 125 at 1-2).

To the extent there are additional documents responsive to the foregoing requests relating to Newinvest, the defendants shall produce such documents *on or before December 21, 2018*.[2]

B.  ITEMIZATION NO. 2 – WALFORD

The Trustee seeks documents responsive to his Document Request Nos. 92-95 to Killilea[3] and Document Request No. 51 to John Dunne, which requests state as follows:

Request No. 92: All documents concerning your selection or acquisition of Walford, including but not limited to the closing file.

Request No. 93: Documents and communications concerning the source of funds used to acquire the Walford property.

Request No. 94: Documents and communications concerning any consideration you paid to acquire the Walford property.

Request No. 95: All documents concerning the marketing and sale of Walford, including but not limited to the closing file.

The Trustee now seeks the following:

1. Documents and communications concerning the capitalization of Yesreb Holding Limited ("Yesreb"), including but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

2. Documents and communications concerning the source of funds used by Yesreb to purchase Walford, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

---

[2] In light of the current Scheduling Order in this case (*see* Doc. No. 74), these documents must be produced as soon as practicable, but not later than December 21, 2018.

[3] Although the parties include Document Request No. 51 to John Dunne in this subsection, it is also addressed in Itemization No. 3, relating to the sources of funds used to purchase U.S. properties.  The Court will address Request No. 51 in Section III.C. *infra.*

3. Documents and communications concerning ownership of Yesreb, including, but not limited to, any stock ledger, schedule of beneficiaries, membership interests or other documents identifying the owners.

4. Documents and communications concerning any loan to Yesreb, including, but not limited to, the €15,000,000.00 credit facility made available to Yesreb by Killilea and the source of funds for such credit facility.

5. Communication between or among the Defendants and Yesreb.

6. Communications between the Defendants and the Debtor, James Ryan, Ross Connolly, Roy Abramowitz, Joseph Leshkowitz or any third party concerning Yesreb.

(Doc. No. 109 at 3-4).

At oral argument on November 16, 2018, the Trustee explained his understanding of the 2005 Walford property transaction (*see* Doc. No. 99 at 19-22), and the defendants reiterate the transaction in their brief in opposition to the Trustee's supplemental filing. (*See* Doc. No. 120 at 7-8). The parties explain that Dunne purchased Walford on July 1, 2005, in trust, for €54,000,000.00. Then Dunne transferred his rights to the Walford property to an entity known as Matsack Nominees which held that property for the benefit of Killilea. In 2013, the property was transferred to Yesreb, a Cypriot company which is managed by an entity known as Totalserve, which was established by a Gibraltar law firm known as Hassans. (Doc. No. 99 at 19-20; *see* Doc. No. 120, at 7-8). The Trustee believes, based on disclosed documents, that Killilea lent Yesreb the money so that Yesreb could buy the Walford property for her, and the beneficial owners of Yesreb are the minor children of Sean Dunne and Gayle Killilea Dunne, through a trust. (Doc. No. 99 at 20). Additionally, according to the Trustee, after the bankruptcy case was filed, Yesreb sold the property to another entity in Ireland. (Doc. No. 99 at 20-21).

The Trustee has explained the link between Yesreb and the Walford transaction, thereby establishing the relevance of the requests directed toward Yesreb.  Although Yesreb is not a party to the Trustee's actions and is the subject of litigation in Ireland, the Trustee has explained that the documents related to the Walford transaction relate to his allegations of fraud.  (*See* Doc. No. 99 at 22).

The additional itemized requests listed above relate to the Walford transaction.  At the November 16, 2018 oral argument, defense counsel stated that the defendants could produce the transactional documents that reflect money related to Walford or the properties that have been named at issue in this case. (Doc. No. 99 at 38-39) ("[W]e can produce the actual transactional documents. And if they need a backup of the bank record on that transaction, we will produce that.  . . . Many of these documents have already been produced as a result of our providing all the Irish discovery to the trustee.").  To the extent that the defendants have not already produced the documents that they committed to producing during the November 16, 2018 proceeding, they shall do so *on or before December 21, 2018*.  Additionally, *on or before December 21, 2018*, the defendants shall provide documents responsive to the categories of documents listed above relating to Yesreb.

C.      ITEMIZATION NO. 3 – SOURCES OF FUNDS USED TO PURCHASE THE U.S. PROPERTIES[4]

---

[4] These real properties are 22 Stillman Lane, Greenwich, CT, 38 Bush Avenue, Greenwich, CT, 42 Bote Road, Greenwich, CT, 151 Milbank Avenue, Greenwich, CT, One Hidden Spring Lane, Rye, NY and 74 Grand Street, New York, NY (collectively, the "U.S. Properties").

In Document Requests Nos. 64, 67, 69,[5] 71, 82 and 87 to Killilea and Request No. 51 to John Dunne, the Trustee sought documents and communications concerning the "source of the funds used to purchase" certain identified properties, and in Request No. 51 to John Dunne, the Trustee sought "[a]ny application for financing you prepared or submitted on behalf of TJD 21." In his Supplemental Itemization, the Trustee seeks the following documents:

1. Documents and communications concerning the source of funds, direct and indirect, used to purchase 38 Bush Avenue, Greenwich, CT.

2. Documents and communications concerning the distribution of the sale proceeds of 38 Bush Avenue, Greenwich, CT, including but not limited to, closing statements, bank statements, wire receipts, checks, deposit slips or withdrawal slips.

3. Documents and communications concerning the source of funds, direct or indirect, used to purchase 42 Bote Road, Greenwich, CT.

4. Documents and communications concerning the distribution of the sale proceeds of 42 Bote Road, Greenwich, CT, including but not limited to, closing statements, bank statements, wire receipts, checks, deposit slips or withdrawal slips.

5. Documents and communications concerning the source of funds, direct and indirect, used to purchase 1 Hidden Springs Lane, Rye, NY.

6. Documents and communications concerning the distribution of sale proceeds [for] 1 Hidden Springs Lane, Rye, NY, including but not limited to closing statements, bank statements, wire receipts, checks, deposit slips or withdrawal slips.

7. Documents and communications concerning the source of funds, direct and indirect, used to purchase 74 Grand Street, New York, NY.

8. Documents and communications concerning the distribution of the sale proceeds [for] 74 Grand Street, New York, NY, including, but not limited to,

---

[5] Document Request No. 69 to Killilea relates to documents and communications between Killilea and Newinvest; it does not relate to the source of funds for any of the U.S. Properties. Additionally, although not referenced in their Supplemental Itemization, Document Request No. 78 relates to the source of funds used for 151 Milbank, Greenwich, CT.

closing statements bank statements, wire receipts, checks, deposit slips or withdrawal slips.

9. Documents and communications concerning the source of funds, direct and indirect, used to purchase 22 Stillman Lane, Greenwich, CT.

10. Documents and communications concerning the source of funds, direct and indirect, used to purchase 151 Milbank, Greenwich, CT.

11. Documents and communications concerning the source of the funds used to pay the security deposit and lease payments for 421 Field Point Road, Greenwich, CT.

12. Documents and communications concerning the source of the funds used to pay the security deposit and lease payments for 526 Indian Field Road, Greenwich, CT.

(Doc. No. 109 at 5-6). The Trustee contends that the defendants have refused to produce the documents showing the sources of funds used to purchase these U.S. Properties. (Doc. No. 109 at 6).

The defendants contend that the Trustee now seeks the source of funds, "direct and indirect," that were used to purchase these properties, and now adds a request related to 1 Hidden Springs Lane property in Rye, NY. (Doc. No. 120, at 8). As to the source of funds, the defendants claim, and the Trustee acknowledges, that, on December 11, 2018, they produced responsive documents in that they "produced all Newinvest loans and have produced documents demonstrating that Killilea was the source of the Newinvest funds." (Doc. No. 120 at 8.) The Hidden Springs Lane property, however, was in the initial requests. As the Trustee points out in his December 13, 2018 reply, the defendants' December 11, 2018 disclosure was untimely. Thus, to the extent there are additional documents responsive to the foregoing requests, including documents response to the Hidden Springs Lane property, the defendants shall produce those documents *on or before December 21, 2018.*

D. ITEMIZATION NOS. 4-5 – BANK STATEMENTS AND FINANCIAL ACCOUNTS

The Trustee seeks documents responsive to his Document Requests Nos. 25, 40, 57, 69, 78, 99, 110-11, 115-17 and 119 to Killilea and Request No. 16 to John Dunne, as follows:

1. Documents and communications concerning any non-US., foreign bank or financial accounts held by the Defendants, directly or indirectly, including, but not limited to, Allied Irish Bank (Account Nos. *8032, *0087), Ulster Bank (Account Nos. *3030, *6963, *9885, *9612, *9539), Bank of Ireland (Account No. *0514), Credit Suisse (Geneva) (Account Nos. *0431-32, *0431-32-1, *0431-32-2, *0431-32-3, *0431-31, *0431-31-4), Standard Bank of South Africa (Account Nos. *2901, *2903, *1101, *1102, *5691, *9101, *9102, *4625-01, *4625-02), Barclays (Account No. *2826), Emirates Islamic Bank (*0051) and/or HSBC (Account No. *8642), including, but not limited to, any account opening, document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

2. Documents and communications concerning any other non-U.S., foreign bank or financial accounts held by the Defendants, directly or indirectly, including, but not limited to, any account opening documents, bank statement, wire receipt, deposit slip, withdrawal slip or check.

3. Documents and communications concerning any U.S. bank or financial account, held by the Defendants, directly or indirectly, including, but not limited to, First Republic Bank, People's United Bank and/or Credit Suisse, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

4. Documents and communications concerning any other U.S. bank or financial account, held by the Defendants, directly or indirectly, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

(Doc. No. 109 at 7).

The defendants contend that they have produced "all bank statements that show the receipt of all transfers from the Debtor, Sean Dunne[,]" and that the Trustee is in possession of documents produced by third parties pursuant to subpoenas issued by the Trustee. (Doc. No. 120 at 9). Thus, they object to further production in response to these requests. Moreover, the requests above are

not limited in time, and the defendants object to discovery after the period referenced in the complaint, which is "approximately 2013." (Doc. No. 120 at 10). The defendants contend that the plaintiffs should only be entitled to banking information if they prevail on their claims, in which case they would be entitled to an accounting for the time-period alleged in the complaints. (Doc. No. 120 at 10).

This is a financial fraud case. Fraudulent transfers, are defined by, among other factors, "whether . . . the debtor retained possession or control of the property after the transfer[.]" CONN. GEN. STAT. § 52-552e(b). Thus, as the Trustee appropriately notes, the financial information after 2013 "is required to determine the amount of money that was returned to the Debtor by the Defendants after his bankruptcy filing." (Doc. No. 125 at 6). Accordingly, the defendants' production is not limited to 2013, and the defendants have failed to state with specificity any other grounds for objecting to this request. *See* FED. R. CIV. P. 34. Accordingly, *on or before December 21, 2018*, the defendants shall produce responsive documents.

E.   ITEMIZATION NO. 6 – JOHN DUNNE'S OWNERSHIP OF, EMPLOYMENT BY, AND COMPENSATION RECEIVED FROM THE DUNNE ENTITIES

The Trustee seeks documents responsive to his Document Request Nos. 6, 8, 50, 74, 84, 89, 97, 102, 115-18 to John Dunne, as follows:

1.   Documents and communications concerning John Dunne's ownership of Mountbrook USA, LLC, Molly Blossom LLC, Barclay Beattie & Brown, LLC, Wahl, LLC, SRQ, LLC, TJD21, LLC and/or Milbank, LLC, including, without limitation, the source of the funds used to pay for the consideration given by John Dunne in exchange for the ownership interests.

2.   Financial documents concerning the source of funds used to pay for the consideration given by John Dunne in exchange for his ownership interests [in] Mountbrook USA, LLC, Molly Blossom LLC, Barclay Beattie & Brown, LLC, Wahl, LLC, SRQ, LLC, TJD21, LLC and/or Milbank, LLC, including, but not

limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

3. Documents and communications concerning John Dunne's employment by Mountbrook USA, LLC, Molly Blossom LLC, Barclay Beattie & Brown, LLC, Wahl, LLC, SRQ, LLC, TJD21, LLC and/or Milbank, LLC.

4. Financial documents concerning John Dunne's employment by Mountbrook USA, LLC, Molly Blossom LLC, Barclay Beattie & Brown, LLC, Wahl, LLC, SRQ, LLC, TJD21, LLC and/or Milbank, LLC, including, but not limited to, any account opening documents, bank statement, wire receipt, deposit slip, withdrawal slip or check.

5. Documents and communications concerning the compensation paid to John Dunne by Mountbrook USA, LLC, Molly Blossom LLC, Barclay Beattie & Brown, LLC, Wahl, LLC, SRQ, LLC, TJD21, LLC and 151 Milbank, LLC.

6. Financial documents concerning the source of funds used to pay the compensation received by John Dunne from Mountbrook USA, LLC, Molly Blossom LLC, Barclay Beattie & Brown, LLC, Wahl, LLC, SRQ, LLC, TJD21, LLC and/or Milbank, LLC, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

(Doc. No. 109 at 8-9).

The defendants represent that they are "in the process of and intend to provide a supplemental production concerning the categories of information the Trustee seeks relating to John Dunne." (Doc. No. 120 at 10). The defendants shall provide their supplemental production *on or before December 21, 2018*.

F. ITEMIZATION NO. 7 - FORMATION OF COMPANY OR TRUST IN WHICH JOHN DUNNE HOLDS AN INTEREST OR ACTS AS TRUSTEE

In his Supplemental Itemization, the Trustee represents that he is seeking documents responsive to his Document Request Nos. 39-42, 48, 77, 79, 80, 86, 96, 98 to John Dunne, as follows:

1. Documents and communications concerning the formation of Mountbrook USA, LLC, Molly Blossom LLC, Barclay Beattie & Brown, LLC, Wahl, LLC, SRQ, LLC, TJD21, LLC and/or Milbank, LLC.

2. Financial documents concerning the source of funds used to capitalize Mountbrook USA, LLC, Molly Blossom LLC, Barclay Beattie & Brown, LLC, Wahl, LLC, SRQ, LLC, TJD21, LLC and/or Milbank, LLC, including, but not limited to, any account opening documents, bank statement, wire receipt, deposit slip, withdrawal slip or check.

3. Documents and communications concerning the formation of any business entity in which John Dunne holds an ownership interest.

4. Financial documents concerning the source of funds used to capitalize any business entity in which John Dunne holds and ownership interest, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

5. Documents and communications concerning the formation of any trust for which John Dunne acts as trustee.

6. Financial documents concerning the source of funds used for any trust for which John Dunne acts as trustee, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip or check.

(Doc. No. 109 at 9-10). The Trustee, however, only propounded 70 requests for production to John Dunne. The defendants contend that they produced all responsive documents and that John Dunne "should not be obligated to produce documents concerning entities which are not named in the complaints and which are not specifically referenced in discovery requests directed to him." (Doc. No. 120 at 11).

In his reply, the Trustee contends that although defendants represent that they produced all responsive documents, the defendants' productions were not "segregated by [d]efendant or by producing party, making it impossible for the Trustee to ascertain which [d]efendant produced which documents." (Doc. No. 125 at 8; *see* Doc. No. 64 at 30). *On or before December 21, 2018*, the defendants shall identify which documents were produced in response to which request.

G.     ITEMIZATION NO. 8 – JDDC CONSTRUCTION INC.

In Document Request No. 67 to John Dunne, the Trustee seeks documents "concerning your roles and responsibilities with JDDC Construction."  Now, the Trustee seeks production of the following additional information:

1. Documents and communications concerning John Dunne's roles and responsibilities with JDDC Construction, Inc.

2. Financial documents concerning the source of capital contributions or investments made by John Dunne, the Debtor and/or Killilea in JDDC, whether directly or indirectly, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

(Doc. No. 109 at 10).

The defendants respond that "to the best of Defendants' knowledge, all non-privileged communications and correspondence concerning JDDC and Killilea's investment in JDDC was produced[,]" and "although John Dunne's involvement with JDDC was and is de minimus, he is searching for any documents he may have and will produce them."  (Doc. No. 120 at 11-12). John Dunne's supplemental production relating to Request No. 67 shall be made *on or before December 21, 2018*.

H.     ITEMIZATION NO. 9 - TRANSFERS TO JOHN DUNNE FROM THE DEBTOR AND KILLILEA

The Trustee maintains that in Document Requests Nos. 3-4 and 10 to John Dunne, the following specific categories of documents have not been produced by the defendants:

1. Documents and communications concerning any transfers of assets that John Dunne received, directly or indirectly, from the Debtor, including, but not limited to 9a Churchfields, K Club, Straffan, Co. Kildare.

2. Financial documents concerning any transfer of assets to John Dunne from the Debtor, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

17

3. Documents and communications concerning any transfers of assets that John Dunne received, directly or indirectly, from Killilea, including, but limited to, Yesreb, 151 Milbank, LLC, TJD21, LLC and/or Mountbrook USA, LLC.

4. Financial documents concerning any transfer of assets to John Dunne from Killilea, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

(Doc. No. 109 at 11-12).

The defendants contend that they have produced "many responsive documents including communications and other relevant transfers of assets between Killilea, Mountbrook USA, LLC, TJD21 and John Dunne[,]" and the Trustee has never raised any purported deficiency with John Dunne's production. (Doc. No. 120 at 12-13). *On or before December 21, 2018*, the defendants shall identify what documents they have already produced which are responsive to these requests. Moreover, to the extent that documents identified as responsive to these requests have not been produced, the defendants shall produce them *on or before December 21, 2018*.

I.    ITEMIZATION NO. 10 – TRUSTS FOR THE BENEFIT OF JOHN DUNNE OR FOR WHICH HE SERVES AS A TRUSTEE

The Trustee seeks documents responsive to his Document Request Nos. 6-8, 30 and 66 to John Dunne, among which the following categories of documents have not been produced:

1. Documents and communications concerning any trust established for John Dunne's benefit, directly or indirectly, by the Debtor or Killilea.

2. Financial documents concerning source of funds for any trust established for John Dunne's benefit, directly or indirectly, by the Debtor or Killilea, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

3. Documents and communications concerning any trust for which John Dunne acts as trustee or is a beneficiary.

4. Financial documents concerning the source of funds for any trust for which John Dunne acts as the Trustee, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

5. Documents and communications concerning any trust related to Mountbrook USA, LLC, Molly Blossom LLC, Barclay Beattie & Brown, LLC, SRQ, LLC, TJD21, LLC and/or 151 Milbank, LLC, including, without limitation, any beneficiary list or trust declaration or indenture.

6. Financial documents concerning the source of funds for any trust related to Mountbrook USA, LLC, Molly Blossom LLC, Barclay Beattie & Brown, LLC, Wahl, LLC, SRQ, LLC, TJD21, LLC and/or 151 Milbank, LLC, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

(Doc. No. 109 at 12-13). The defendants respond that John Dunne has produced responsive documents, including at least four trust instruments. (Doc. No. 120 at 13). To the extent that there are additional responsive documents that have not been produced, the defendants shall produce such documents *on or before December 21, 2018.*

J.      ITEMIZATION NO. 11 – TJD21, LLC

The Trustee seeks documents responsive to his Document Request Nos. 38-51, 76 and 77 to John Dunne, and seeks production of the following documents that have not been produced:

1. Documents and communications concerning the capitalization of TJD21, LLC, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

2. Documents and communications concerning the source of funds used by TJD21, LLC to purchase 74 Grand Street, New York, NY, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

3. Documents and communications concerning the ownership of TJD21, LLC, including, but not limited to, any stock ledger, schedule of beneficiaries, membership interests or other documents identifying the owners.

4. Documents and communications concerning any loan to TJD21, LLC, including, but not limited to, any loan or loans made by Killilea for the purchase of 74 Grand Street, New York, NY and the source of funds for such loan.

5. Communications between or among the Defendants and TJD21, LLC.

6. Communications between the Defendants and the Debtor, James Ryan, Ross Connolly, Roy Abramowitz, Joseph Leshkowitz, Newinvest or any third party concerning TJD21, LLC.

7. Communications between or among the Defendants concerning the sale of 74 Grand Street to 74 Grand St. Equities, LLC ("Grand St. Equities") on or about March 3, 2016.

8. Communications between the Defendants and the Debtor, James Ryan, Ross Connolly, Grand St. Equities, Paul McDonnell, Greg Kavanagh, Roy Abramowitz, Joseph Leshkowitz, Newinvest or any third party concerning the sale of 74 Grand Street, New York, NY to Grand St. Equities on or about March 3, 2016.

9. Documents and communications concerning the distribution of the sale proceeds to John Dunne from the 2016 sale of 74 Grand Street, New York, NY, including, but not limited to, closing statements, bank statements, wire receipts, checks, deposit slips or withdrawal slips.

(Doc. No. 109 at 13-14).

The defendants respond that documents related to the sale of 74 Grand Street have been produced, and the Trustee has "not now particularized what additional information he needs on the sale of 74 Grand Street and why he needs it."  (Doc. No. 120 at 13-14).  In his reply, the Trustee does not articulate what additional information is outstanding, other than to request that the defendants "identify with specificity and certify" which documents they produced in response to Document Request Nos. 38-51, 76 and 77 to John Dunne.  (Doc. No. 125 at 11-12).  To the extent that these documents have not already been produced, and/or specifically identified as responsive to these requests, the defendants shall respond *on or before December 21, 2018*.

K.      ITEMIZATION NO. 12 – MOUNTBROOK USA, LLC

The Trustee seeks documents responsive to his Document Request Nos. 19, 52-57, 73, 76 and 78 to John Dunne, including the following documents related to Mountbrook USA, LLC's joint venture with 74 Grand Equities LLC and/or its principle that have not been produced by the defendants:

1.  Documents and communications concerning the capitalization of Mountbrook USA, LLC, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

2.  Documents and communications concerning the source of funds used by Mountbrook USA, LLC to purchase 74 Grand Street, New York, NY, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

3.  Documents and communications concerning the ownership of Mountbrook USA, LLC, including, but not limited to, any stock ledger, schedule of beneficiaries, membership interests or other documents identifying the owners.

4.  Documents and communications concerning any loan to Mountbrook USA, LLC, including, but not limited to, any loan or loans made by any of the Defendants.

5.  Documents and communications concerning Mountbrook USA, LLC's joint venture with 74 Grand St Equities LLC, Paul McDonnell or Greg Kavanagh.

6.  Documents and communications concerning the March 3, 2016 agreement between and among Mountbrook USA, LLC, Killilea, Greg Kavanagh, Paul McDonnell, 74 Grand St. Equities LLC and/or 74 Grand St. Holdings LLC ("MBUSA Agreement").

7.  Documents and communications concerning the March 3, 2015 Nominee Agreement between Paul McDonnell and Greg Kavanagh (the "Nominee Agreement").

8.  Documents and communications concerning payments made to Mountbrook USA, LLC, Killilea and/or John Dunne pursuant to the MBUSA Agreement or the Nominee Agreement, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

9. Documents and communications concerning the distribution of the sale proceeds to Mountbrook USA, LLC from the 2016 sale of 74 Grand Street, New York, NY, including, but not limited to, closing statements, bank statements, wire receipts, checks, deposit slips or withdrawal slips.

10. Communications between or among the Defendants concerning the MBUSA Agreement, the Nominee Agreement, Greg Kavanagh, Paul McDonnell, 74 Grand St. Equities LLC and/or 74 Grand St. Holdings LLC.

11. Communications between the Defendants and the Debtor, James Ryan, Ross Connolly, Roy Abramowitz, Joseph Leshkowitz, Greg Kavanagh, Paul McDonnell, 74 Grand St. Equities LLC, 74 Grand St. Holdings LLC or any third party concerning the MBUSA Agreement, the Nominee Agreement and/or any agreement by Mountbrook USA, LLC related to 74 Grand Street, New York, NY.

(Doc. No. 109 at 14-15).

The defendants correctly respond that documents concerning "Mountbrook USA, LLC's joint venture with 74 Grand St Equities LLC and/or its principles[]" were not identified as part of the original document requests referenced above. (Doc. No. 120 at 14). This latest itemization is an expansion of the underlying request.

As discussed above, however, this is a fraudulent transfer case, and the defendants' production has led to additional requests since the Trustee cannot anticipate what new information might be relevant until the most recent production is made. The Trustee points out that Killilea alleged in bankruptcy filings that she "held an undisclosed residual interest in the 74 Grand Street project even after TJD21, LLC sold the property to Equities. TJD21, LLC was nominally owned by Killilea and John Dunne. Equities, therefore was either the initial transferee or the immediate or mediate transferees of such initial transferee from Sean Dunne's insider family members and insider entities, which is a badge of actual fraud." (Doc. No. 125 at 12). Thus, contrary to the defendants' contention, the Trustee has explained the need for these additional documents. *On*

*or before December 21, 2018*, the defendants shall produce documents responsive to the foregoing requests.

L.      ITEMIZATION NO. 13 – 151 MILBANK, LLC

The Trustee seeks documents responsive to his Document Request Nos. 19-37 and 78 to John Dunne, which requests relate to 151 Milbank LLC. The Trustee seeks the following categories of documents:

1. Documents and communications concerning the capitalization of 151 Milbank, LLC, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

2. Documents and communications concerning the source of funds used by 151 Milbank, LLC to purchase 151 Milbank Avenue, Greenwich, CT, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

3. Documents and communications concerning the ownership of 151 Milbank, LLC, including, but not limited to, any stock ledger, schedule of beneficiaries, membership interests or other documents identifying the owners.

4. Documents and communications concerning any loan to 151 Milbank, LLC, including, but not limited to, any loan or loans made by any of the Defendants.

5. Documents and communications concerning the acquisition of 151 Milbank Avenue, Greenwich, CT on or about April 25, 2014.

6. Documents and communications concerning transfers from 151 Milbank, LLC to Mountbrook USA, LLC, TJD21, LLC and/or any of the Defendants.

7. All communications by James Ryan concerning the Trustee's claims against 151 Milbank LLC.

8. All communications between or among the Defendants concerning the acquisition of 151 Milbank Avenue, Greenwich, CT on or about April 25, 2014.

9. All communications between the Defendants and the Debtor, James Ryan, Ross Connolly, Roy Abramowitz, Joseph Leshkowitz or any third party concerning the acquisition of 151 Milbank Avenue, Greenwich, CT on or about April 25, 2014.

(Doc. No. 109 at 17-18).

The Trustee argues that the defendants have refused to produce documents and communication concerning the source of funds for the 151 Milbank project, acquisition of the property, capitalization of 151 Milbank LLC, third-party investor documents and communications related thereto, including, without limitation, communications made by James Ryan, which are not subject to the attorney-client privilege or any other privilege. (Doc. No. 109 at 17).

The defendants argue that the Trustee has not "particularized what additional information he needs on 151 Milbank, given the numerous documents which have been produced." (Doc. No. 120 at 15). Additionally, the defendants contend that they have produced these responsive documents, including "many communications with James Ryan that concern factual or transactional matters." (Doc. No. 120 at 15).

As the defendants are aware, it is their burden of proving the applicability of the attorney-client privilege:

> A party invoking the attorney-client privilege bears the burden to establish the elements of the privilege: "(1) communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice."

*In re Smith*, No. 14-21261(JJT), 2017 WL 1190590, at *5 (Bankr. D. Conn. Mar. 29, 2017) (quoting *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). "The rule in this Circuit, . . . is that the applicability of the attorney-client privilege to a particular communication depends upon 'whether the predominant purpose of the communication is to render or solicit legal advice.'" *Deutsche Bank Nat. Trust Co. v. WMC Mortg., LLC*, Nos. 3:12 CV 933(CSH), 3:12 CV

969(CSH), 3:12 CV 1699(CSH), 3:12 CV 1347(CSH), 2015 WL 1650835, at *5 (D. Conn. Apr. 14, 2015) (quoting *Erie*, 473 F.3d at 420) (footnote omitted)).

As the defendants explain, James Ryan is an accountant "but has been an integral part of the litigation team for these Defendants since very early on in these proceedings. He works directly and frequently with both [counsel in this case] and Killilea's attorneys in Ireland and elsewhere." (Doc. No. 120 at 15, n.6). The Trustee has "challenged the 6,756 communications logged by [the defendants] in [their] May 4, 2018 privilege log." (Doc. No. 125 at 14). The defendants' recitation, however, does not satisfy their burden of establishing that the documents withheld are, in fact, protected by the attorney-client or work-product privilege.

As with the documents discussed in Section III.S. *infra*, the parties shall confer about the privilege designations. To the extent that the defendants have additional documents responsive to the foregoing requests that have not yet been produced, including documents from James Ryan which are not protected by the attorney-client or work-product privilege, the defendants shall produce such documents *on or before December 21, 2018*.

M.      ITEMIZATION NO. 14 – OFFSHORE ENTITIES

The Trustee seeks documents responsive to his Document Request Nos. 69, 96-103 and117-18 to Killilea, including the following categories of documents that have not been produced:

1.  Documents and communications concerning the $25,000,000.00 loan facility that Killilea made available to Line Trust Corporation Ltd.

2.  Documents and communications concerning the capitalization of Amrakbo, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

3. Documents and communications concerning the capitalization of Volcren Management Limited, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

4. Documents and communications concerning the capitalization of Enia Investments, Ltd., including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

5. Documents and communications concerning the source of funds used by Amrakbo to purchase 81 North Wall Quay Dublin and/or 9a Churchfields, K Club, Straffan, Co. Kildare, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

6. Documents and communications concerning the source of funds used by Volcren Management Limited to purchase the Lagoon Beach Hotel (South Africa), including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

7. Documents and communications concerning the source of funds used by Enia Investments, Ltd. to purchase shares of Volcren Management Limited, including, but not limited to, any account opening document, bank statement, wire receipt, deposit slip, withdrawal slip or check.

8. Documents and communications concerning the ownership of Amrakbo, including, but not limited to, any stock ledger, schedule of beneficiaries, membership interests or other documents identifying the owners.

9. Documents and communications concerning the ownership of Volcren Management Limited, including, but not limited to, any stock ledger, schedule of beneficiaries, membership interests or other documents identifying the owners.

10. Documents and communications concerning the ownership of Enia Investments, Ltd., including, but not limited to, any stock ledger, schedule of beneficiaries, membership interests or other documents identifying the owners.

11. Documents and communications concerning any loan to Amrakbo, including, but not limited to, any loan or loans made by any of the Defendants.

12. Documents and communications concerning any loan to Volcren Management Limited, including, but not limited to, any loan or loans made by any of the Defendants.

13. Documents and communications concerning any loan to Enia Investments, Ltd., including, but not limited to, any loan or loans made by any of the Defendants.

14. Communications between or among the Defendants and Amrakbo, Volcren Management Limited and/or Enia Investments, Ltd.

Communications between the Defendants and the Debtor, James Ryan, Ross Connolly, Roy Abramowitz, Joseph Leshkowitz or any third party concerning Amrakbo, Volcren Management Limited and/or Enia Investments, Ltd.(Doc. No. 109 at 17-19).

In response, the defendants object to producing documents related to Amrakbo on the basis that Amrakbo is not a defendant in this action. (Doc. No. 120 at 16). Additionally, the defendants contend that the documents related to Yesreb "are more properly the subject of the two pending actions in Ireland involving Yesreb," and the Volcren requests were not mentioned in the underlying document requests, nor raised in any of the parties' good faith conferences, and the Trustee has "never explained why or how these entities are relevant to the issues raised in the complaints." (Doc. No. 120 at 16).

The Trustee, however, explains that Sean Dunne claimed at his 341 meeting of creditors that he was employed by Amrakbo, another entity owned by Killilea, and that it received substantial sums of money from another entity owned and controlled by Sean Dunne in the period leading up to his bankrupcy. (Doc. No. 125 at 15). The relationship with Yesreb has been addressed above; such information is discoverable. As for Volcren Management Limited and Enia Investments, Ltd., the Trustee explains that these "other entities are off-shore entities nominally controlled by Killilea." (Doc. No. 125 at 20). The Trustee, however, does not explain at what time Volcren Management Limited and Enia Investments, Ltd. were controlled by Killilea. Accordingly, the Trustee's requests as to Volcren and Enia are denied, but his requests

relating to Amrakbo and Yesreb are granted. Thus, to the extent that the defendants have not already produced full responses relating to Amrakbo and Yesreb, such production shall be made *on or before December 21, 2018.*

N.      ITEMIZATION NO. 15 – REID & REIGE, P.C.

The Trustee seeks documents from Killilea's then-bankruptcy counsel, Reid & Reige. (Doc. No. 109). The defendants argue that the Trustee is in receipt of "three tranches of documents" from third parties that were produced by Reid & Reige, which include: (1) Credit Suisse and First Republic Bank documents; (2) Credit Suisse, First Republic Bank and realtor documents that were produced directly to NAMA by Reid & Reige; and (3) 939 pages of People's United Bank documents which were to be reviewed by the defendants for privacy concerns. (Doc. No. 120 at 17).

The defendants contend that, on November 16, 2018, they ceived from the Trustee documents produced directly to the Trustee by People's United Bank in October 2015 pursuant to a subpoena issued to People's United Bank by the Trustee, which production included all 939 pages of documents originally in Reid & Reige's possession. (Doc. No. 120 at 17).   The Trustee represents that he will "confer with [the defendants'] counsel regarding the 'third tranche'" to confirm that the responsive documents have been produced, and he reiterates his request that the defendants produce directly the first and second "tranches" of the Reid & Reige production. (Doc. No. 125 at 15).

The Trustee is in receipt of these responsive documents, however, either from the defendants' production on November 16, 2018, or from Reid & Reige's production by third

parties.  Accordingly, if, after review of these documents, there is any discovery outstanding, the Trustee may renew his request for documents to be produced directly from the defendants.

O.     ITEMIZATION NO. 16 – FIRST REPUBLIC BANK DOCUMENTS

The Trustee is in possession of 128 pages of First Republic documents which the defendant redacted on grounds that they related only to "personal transactions."  (Doc. No. 109 at 19). The Trustee seeks unredacted copies of the bank statements and other bank documents in light of the Protective Order entered in the Bankruptcy Court, and the Court's Standing Protective Order. (Doc. No. 109 at 19).  The defendant explains that the Protective Order entered in the Bankruptcy Court contemplated that the OA (the Trustee's Irish counterpart), NAMA and Ulster would sign a confidentiality agreement prior to being given access to the defendants' document production, but to date, the only signatory to the agreement is NAMA.  (*See* Doc. No. 120 at 18-19, Doc. No. 99 at 69).   Even in the absence of the signed agreement, the defendants "recently re-produced the First Republic Bank documents with redactions removed sufficient to show dates and amounts for all transactions (personal or business) and descriptions for any personal transactions over $5,000.00."  (Doc. No. 120 at 19).  The Trustee, however, argues that these documents are "still improperly redacted[.]" (Doc. No. 125 at 15-16).

*On or before December 20, 2018 at 12:00 p.m.*, the defendants shall submit to Chambers for the Court's *in camera* review copies of the First Republic Bank Documents with the redacted portions identified.  The Trustee shall submit a letter to Chambers specifically articulating his reasons why the redactions should be removed.

P.     ITEMIZATION NO. 17 – D'AGOSTINO, LEVINE, LANDESMAN & LEDERMAN, LLP

In light of the defendants' recent production of a privilege log for the 346 pages withheld on the basis of attorney-client and/or attorney work product doctrine, the Court finds this request moot. (*See* Doc. No. 120 at 19).

Q.      ITEMIZATION NO. 18 – IMPROPER CONFIDENTIAL DESIGNATIONS

The Trustee requests that the defendants remove the "Confidential" designation of 33,533 pages of their electronic document production. (Doc. No. 109 at 20-21). In their briefs, the parties discuss the Protective Order entered by the Bankruptcy Court in this case. (Doc. No. 109 at 20-21; Doc. No. 120 at 19-20). The relevant language is identical to the following language in the Court's Standing Protective Order which entered in this case on January 12, 2015:

> The parties will use reasonable care to avoid designating as confidential documents or information that does not need to be designated as such.
>
> A party may submit a request in writing to the party who produced Designated Material that the designation be modified or withdrawn. If the Designating Person does not agree to the redesignation within fifteen business days, the objecting party may apply to the Court for relief. Upon any such application, the burden shall be on the Designating Person to show why the designation is proper. Before serving a written challenge, the objecting party must attempt in good faith to meet and confer with the Designating Person in an effort to resolve the matter. The Court may award sanctions if it finds that a party's position was taken without substantial justification.

(Doc. No. 3 at 3, ¶¶ 11-12). The defendants contend that the Trustee "never raised any issues concerning any specific documents." (Doc. No. 120 at 20). The parties are directed to address the confidentiality designations in accord with the language set forth in the Protective Order entered in the case and in the Bankruptcy action.

R.      ITEMIZATION NO. 19 – TIME PERIOD OBJECTIONS

The Trustee argues that, although the defendants represented that they would supplement their document production to include "otherwise non-objectionable, responsive, non-privileged documents for the time period January 1, 2006 to the present[,]" the defendants have "selectively picked documents from this timeframe, . . . rather than produce all responsive documents."  (Doc. No. 109 at 21).   The defendants argue that they provided a supplemental production and the Trustee "never raised any purported deficiency with the pre[-]March 2009 production . . . and has not now particularized what additional information he needs and why he needs it."  (doc. No. 120 at 21-22).  In his reply, the Trustee simply reiterates his request for an order to the defendants to "produce immediately all responsive documents and communications dating back to January 1, 2006[]."  (Doc. No. 125 at 16).

The parties shall meet and confer to discuss the outstanding documents, if any, sought by the Trustee.

S.      ITEMIZATION NO. 20 – RELEVANT AND RESPONSIVE DOCUMENTS
        WITHHELD BUT DISCLOSED IN DEFENDANTS' SCHEDULE 3;
        ITEMIZATION NOS. 21-23 – SCHEDULED 4, 4-A AND 4-B

In the Trustee's Itemization No. 20, the Trustee seeks seventeen categories of documents he contends were withheld by the defendants. (Doc. No. 109 at 22-23).  The Trustee became aware of these documents when the defendants listed them in a privilege log identified as Schedule 3 to a May 4, 2018 affidavit produced in the bankruptcy action.  (Doc. No. 109 at 22-23).  Similarly, in the Trustee's Itemization Nos. 21-23, the Trustee challenges the attorney-client privilege designations detailed in Schedule 4, Schedule 4-A and Schedule 4-B.  (Doc. No. 109 at 23-25).

The Court addressed the parties' privilege logs during the November 16, 2018 hearing, during which the Court inquired whether there was a separate motion addressing this issue and then informed the parties: "I think it really needs to be its own motion if it's going to be something the Court acts on. We had a motions deadline to do that." (Doc. No. 99 at 78-79). The Court then stated that "this is something to raise with respect to the same other motion[]" that was referred to this Magistrate Judge. (Doc. No. 99 at 80). The Court directed the parties to "look at [the] specific privilege items" and then confer with each other and "try to resolve it." (Doc. No. 99 at 80). The defendants contend that the Trustee "did not attempt to identify any specific items to [the defendants] in an effort to resolve any disputes concerning them." (Doc. No. 120 at 23). Before this Magistrate Judge wades into the issue of the privilege logs, the parties are directed once again to confer and try to resolve the outstanding privilege issues.

IV.    CONCLUSION

For the reasons stated above, the Trustee's Motion to Compel (Doc. No. 64) is *granted in part and denied in part* as follows:

*on or before December 21, 2018*, the defendants shall produce responsive documents or supplement their responses to Itemization Nos. 1, 2, 3, 4, 5, 6, 8, 9, 10, 11 and 12;

*on or before December 21, 2018*, to the extent that the defendants have additional documents responsive to the requests in Itemization No. 13, including documents from James Ryan which are not protected by the attorney-client or work-product privilege, the defendants shall produce such documents, and the parties shall confer about the privilege designations.

*on or before December 21, 2018*, the defendants shall produce full responses relating to Amrakbo and Yesreb as requested in Itemization No. 14;

the Trustee's request for production relating to Volcren Management Limited and Enia Investments, Ltd., as requested in Itemization No. 14, is *denied*;

*on or before December 21, 2018*, the defendants shall identify which documents were produced in response to which request in Itemization Nos. 7, 9 and 11;

the request in Itemization No. 15 as to the documents from Reid & Reige is *denied without prejudice to renewal, if necessary*;

*on or before December 20, 2018, at 12:00 p.m.*, the defendants shall submit to Chambers for the Court's *in camera* review copies of the First Republic Bank Documents listed in Itemization No. 16, with the redacted portions identified. The Trustee shall submit a letter to Chambers specifically articulating his reasons why such the redacted entries should be removed;

the request in Itemization No. 17 is *denied as moot*;

the request in Itemization No. 18 is *denied*; the parties are directed to comply with the procedure set forth in the Protective Orders entered in this action;

the request in Itemization No. 19 is *denied without prejudice to renewal*; the parties are directed to meet and confer as soon as practicable in light of the current Scheduling Order; and,

the requests in Itemization No. 20 is *denied without prejudice to renewal*; as soon as practicable in light of the current Scheduling Order, the parties are directed to meet and confer to address the outstanding privilege issues.

This is not a Recommended Ruling. This is an order regarding discovery which is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. §

636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

Dated at New Haven, Connecticut, this 18th day of December, 2018.


___/s/ Robert M. Spector, USMJ___
Robert M. Spector
United States Magistrate Judge