# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

RICHARD M. COAN,
    *Plaintiff-Trustee*,

v.

SEAN DUNNE *et al.*,
    *Defendants*.

No. 3:15-cv-00050 (JAM)
Adv. Proc. No. 15-5019 (JAM) (consol.)

## ORDER RE APPLICATIONS TO RETAIN COUNSEL

Plaintiff-Trustee Richard M. Coan and defendants Gayle Killilea, Mountbrook USA, LLC, and Wahl, LLC are at odds over whether the Trustee may retain two sets of lawyers in connection with the consolidated proceedings now before the Court and pending trial in May 2019. The Trustee has applied for permission to hire the Connecticut firm of Updike, Kelly, & Spellacy, P.C. (Updike) as special counsel. Doc. #102. The Trustee has also applied to the Court for permission to hire the Irish firm of AMOSS Solicitors for necessary assistance in Ireland. Doc. #104. Defendants have opposed both applications (Doc. #127; Doc. #128).

I will deny the application as to Updike and grant it as to AMOSS. As an initial matter, I conclude that the appointment of Updike and AMOSS is consistent with the statutory requirements of the Bankruptcy Code, 11 U.S.C. § 327. As to Updike, however, I conclude that it has a "former client" conflict of interest pursuant to Rule 1.9(a) of the Connecticut Rules of Professional Conduct that prevents its representation of the Trustee in light of its prior representation of defendant Mountbrook. As to AMOSS, I conclude that I have no authority to regulate AMOSS's participation in any Irish bankruptcy proceedings and that, to the extent that AMOSS's involvement may extend to any activities in the case now before me, AMOSS does not labor under a conflict or other disqualifying interest.

1

**BACKGROUND**

This case is a consolidated action involving claims by a bankruptcy trustee seeking to recover assets relating to the bankruptcy of Sean Dunne. *See In re Dunne*, No. 13-50484 (Bankr. D. Conn.). Dunne was a prominent real estate developer in Ireland with a reported net worth of more than $900 million in 2007. Doc. #50 at 2. But Dunne soon suffered devastating financial reversals after the global financial crisis struck in 2008, and this has set in motion years of efforts by creditors and bankruptcy trustees in the United States and Ireland to recover from him.

In 2010 the government of Ireland created the National Asset Management Agency ("NAMA") to acquire troubled bank assets and other obligations. *Ibid.* In the meantime, Dunne and his spouse—defendant Gayle Killilea—moved to Greenwich, Connecticut in 2010. *Ibid.*; Doc. #1-1 at 15. In 2012 Dunne consented to a stipulated judgment against him and in favor of a NAMA-related entity known as National Asset Loan Management, Ltd. ("NALM") for about $235 million stemming from personal guarantees that Dunne had given to secure debt for his companies. *Ibid.*

NALM, however, suspected that Dunne had concealed assets from his creditors, and so NALM filed an action in 2012 in the Connecticut Superior Court claiming that Dunne had fraudulently transferred various assets to others including his spouse Gayle Killilea Dunne (Killilea). *Id.* at 3. Among the defendants named in NALM's action were Dunne, Killilea, and a Connecticut limited liability company known as Mountbrook USA, LLC that Dunne had allegedly formed but later claimed that Killilea was the sole member. Doc. #1 at 1; Doc. #1-1 at 11–13. Mountbrook was alleged to have paid real estate taxes on certain properties in Greenwich as well as to own cars driven by Dunne and Killilea. Doc. #1-1 at 13, 15. NALM's state court complaint alleged that Dunne had fraudulently transferred his interest in Mountbrook to Killilea,

as well as fraudulently transferred various other funds and assets including real estate in Greenwich and in Switzerland. Doc. #1-1 at 16-21.

While this state court action was pending, Dunne filed for bankruptcy in March 2013 in the U.S. Bankruptcy Court in the District of Connecticut, and his creditors soon commenced a bankruptcy action against him as well in Ireland. Doc. #50 at 3–4. In January 2015, Dunne waived his discharge in the U.S. bankruptcy action, and the bankruptcy trustee—plaintiff Richard Coan—moved to intervene in the state court action and to remove it to this Court. *Id.* at 4; Doc. #1. The Court granted the Trustee's motion to intervene and denied defendants' motion to remand. Doc. #38.

About two months later, the Trustee commenced a separate but somewhat duplicative adversary proceeding in the Bankruptcy Court against Killilea and others in March 2015. *See Coan v. Killilea*, Adv. Proc. No. 15-05019 (D. Conn.). The Trustee alleged 35 causes of action based on alleged fraudulent transfer of assets or money to Killelea from 2005 to 2008, including claims that Dunne had fraudulently transferred his interests in Mountbrook to Killilea. Doc. #50 at 4–5.

A few years passed before the case became active again on my docket. On July 27, 2018, I entered an order for trial to commence in May 2019. Doc. #46. I also granted the Trustee's unopposed motion to consolidate before me the removed state court action with the adversary proceeding that had been proceeding on a separate track in the Bankruptcy Court. Doc. #52. Parallel and related proceedings are also taking place in Ireland. *See Lehane v. Dunne* 2014 7820 P (H. Ct.) (Ir.); *In re Dunne (A Bankrupt)* 2013 Bankr. No. 2478 (H. Ct.) (Ir.).

*The Trustee's application to retain Updike*

Although the Trustee is already represented by another law firm, the Trustee proposes to retain Updike as special counsel to render advice and counsel to the Trustee in connection with the trial and any appeal. Doc. #102 at 3. Updike would serve in a "subordinate litigation role on an 'as needed' basis, from time to time, in order to evaluate certain elements and strategy of the matter and to render advice and guidance for the preparation and prosecution of the case," including for purposes of strategy for any appeal. *Ibid.* According to the Trustee, "most" of the time to be incurred by attorneys at Updike would be by attorney Paul Gilmore. *Ibid.*

The Trustee acknowledges that Updike has two prior connections to entities at issue in this case. The first is Updike's prior representation of defendant Mountbrook USA, LLC, and the second is Updike's prior representation of an entity known as Newinvest Holding International Ltd. (Newinvest). I will discuss these prior representations in turn.

*Updike's prior representation of Mountbrook*

In mid-2016 an Updike attorney named Thomas Gugliotti represented defendant Mountbrook USA, LLC, as a creditor for purposes of a bankruptcy proceeding involving 151 Milbank, LLC, which is a single asset real estate entity owning property for a luxury condominium project at 151 Milbank Street in Greenwich. Doc. #102 at 4; Doc. #151 at 12; Doc. #276 to *In re 151 Milbank, LLC*, No. 15-51485 (Bankr. D. Conn. 2016). Mountbrook was the general contractor for the condominium project, and the bankruptcy plan treated Mountbrook as an unsecured creditor. Doc. #151 at 13.

Both Mountbrook and 151 Milbank, LLC, have been named as defendants by the Trustee in the consolidated proceeding that is now before me. Killilea has submitted an affidavit attesting that she owns the membership interests in Mountbrook, that she directs counsel for Mountbrook,

4

and that she consulted with Updike during the course of its representation of Mountbrook in the 151 Milbank bankruptcy proceeding. Doc. #128 at 5–6; Doc. #128-1 at 2–3.

Updike represented Mountbrook at a hearing on the debtor's disclosure statement in that proceeding, Doc. #151 at 10–11, and Updike was counsel for Mountbrook as the debtor filed a pair of amended disclosure statements, the latter of which the Bankruptcy Court approved. *See* Docs. #281, 284, 294, 299, 310 to *In re 151 Milbank, LLC*, No. 15-51485 (Bankr. D. Conn. 2016). The disclosure statements discussed Mountbrook's role as an unsecured insider creditor of 151 Milbank, LLC, and that determinations of its claims would be handled either through the claims objection process or by way of a judicial determination in the adversary proceeding that has been consolidated before me. *See* Doc. #151 at 13; Doc. #284 at 8, 16 to *In re 151 Milbank, LLC*, No. 15-51485 (Bankr. D. Conn. 2016). Ultimately, Updike filed a motion to withdraw as counsel for Mountbrook in June of 2016, Doc. #294 to *In re 151 Milbank, LLC*, No. 15-51485 (Bankr. D. Conn. 2016), and the Bankruptcy Court granted that motion in late July 2016, Doc. #310 to *id.*

### *Updike's prior representation of Newinvest*

The Trustee states that Updike "very briefly" represented Newinvest Holding International Ltd. Doc. #102 at 4. This entity is not a defendant in this action but holds a mortgage on a property at 22 Stillman Lane in Greenwich, Connecticut, which is owned by defendant Wahl. Doc. Doc. #187 at 2. The Trustee referenced the Newinvest mortgage in its complaint in the adversary action in the course of allegations that 22 Stillman Lane has been another object of fraudulent transfer. Doc. #102 at 4. The Trustee represents that "the Killilea Adversary does not challenge the validity of said mortgage and, as aforesaid, the mortgagee [Newinvest] is not a party to the Killilea Adversary," nor "a creditor of the Dunne estate." *Ibid.*

5

By contrast, defendants maintain that the Trustee's act of filing a *lis pendens* on the property of 22 Stillman Lane was adverse to Newinvest's interests as a mortgage holder on the property and adverse to Wahl's selling of the property. Doc. #187 at 2.

### *AMOSS prior representation*

In 2014, a consultant for defendant Killilea named James Ryan contacted solicitor Gavin Simons of AMOSS in Dublin, Ireland, to discuss the possibility of having Simons and AMOSS represent Killilea or Dunne in Irish bankruptcy and related proceedings there. Doc. #127-1 at 2–3 (¶¶ 2–4). Ryan asserts that he discussed Dunne's bankruptcies in the United States and Ireland, claims against Dunne and Killilea in the United States, the potential for future claims against them, and the transfer of assets from Dunne to Killilea. *Id.* at 3 (¶¶ 5–8). Ryan's declaration states that the meeting lasted for only 45 minutes and does not explicitly describe what he told Simons or contend that any of the information that he may have disclosed was confidential. *Ibid.* An affidavit from Solicitor Simons agrees that he and Ryan discussed Dunne's bankruptcies and litigation against Killilea in Ireland, but asserts that nothing confidential was discussed at his meeting with Ryan. Doc. #142-1 at 1–2 (¶ 6). During the course of this meeting, Simons advised Ryan that his firm might have a conflict of interest in undertaking the representation, and Simons followed up a few days later to decline the representation. Doc. #127-1 at 3 (¶¶ 7, 9).[1]

### DISCUSSION

Defendants object to the Trustee's application to retain Updike and to retain AMOSS on the ground that doing so is impermissible under the Bankruptcy Code, and in the alternative, that it would amount to a conflict of interest in violation of the professional conduct rules.

---

[1] Defendants also allege that AMOSS is counsel to the receiver in an Irish lawsuit where the receiver has sued a company owned and controlled by Killilea. Doc. #127 at 8. But because they altogether fail to explain any more facts about this relationship or why it requires the disqualification of AMOSS, I reject these grounds as the basis for relief.

*§ 327 of the Bankruptcy Code*

Section 327(a) of the Bankruptcy Code provides that "the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). The provision's present-tense phrasing ("hold or represent") is important, because it operates only to disqualify counsel that presently holds or represents an adverse interest to the bankruptcy estate, rather than to disqualify counsel who have represented an adverse interest in the past. *See In re AroChem Corp.*, 176 F.3d 610, 623 (2d Cir. 1999). Defendants acknowledge that Updike's representation of Mountbrook and Newinvest took place in the past and has since ended. *See* Doc. #128 at 8.

Moreover, the Second Circuit has made clear that the "disinterested" prong of § 327(a) applies only to the personal interests of a professional that a trustee seeks to hire, and it is meant to be read as distinct from any third-party interest that a professional represents. *See AroChem*, 176 F.3d at 629. There is no evidence that any individual member of Updike is a creditor of Dunne, or that any member of Updike has any of the other personal interests in Dunne enumerated in 11 U.S.C. § 101(14). As such, I will not deny the Trustee's application to hire Updike on the basis of § 327(a).

Similarly, AMOSS never actually represented Killilea, certainly does not represent her now, and no member of AMOSS is alleged to have a personal interest adverse to the bankruptcy estate. Accordingly, § 327(a) furnishes no basis for the Court to bar the retention of AMOSS.

*Updike—former client conflict of interest*

Defendants further argue that the retention of Updike would violate the Connecticut Rules of Professional Conduct that govern when a lawyer may represent a party whose interests

7

are materially adverse to a former client of the lawyer. *See* D. Conn. L. Civ. R. 83.2(a)(1). Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." *See* Conn. R. Prof. Cond. R. 1.9(a); *see also* Conn. R. Prof. Cond. R. 1.10(a) (imputing obligations to former client under Rule 1.9 to entire law firm); D. Conn. L. Civ. R. 83.2(a) (adopting the Connecticut Rules of Professional Conduct with exceptions not relevant here).[2]

As the words of Rule 1.9(a) make clear, the rule does not categorically extend to any representation of a new client that is adverse to a former client. Instead, the critical inquiry is whether the matter involving the former client is "substantially related" to the matter for the putative new client. The commentary to the rule instructs that "[m]atters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute of if there is otherwise a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Conn. R. Prof. Cond. R. 1.9 commentary.

Thus, the determination of whether two representations are "substantially related" may turn on an appraisal of what confidential information "normally" would have been shared, even absent evidence of what actual sharing of information took place. *See United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239, 241 (2d Cir. 2016) (disqualification warranted if "the attorney whose disqualification is sought had access to, *or was likely to have had access to*, relevant

---

[2] The Trustee makes no claim that the imputation principle of Rule 1.10(a) should not apply here, and therefore it is irrelevant that a different attorney at Updike represented Mountbrook in the 151 Milbank proceeding than the attorney from Updike whom the Trustee now proposes to retain.

8

privileged information in the course of his prior representation of the client" and noting that "[t]he substantial relationship test removes the need for courts to make direct inquiry into whether confidential information was actually transmitted") (emphasis added). Accordingly, "[a] former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter," and "[a] conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." Conn. R. Prof. Cond. 1.9 commentary.[3]

Nor does the substantial relationship test require that the dispute or facts at issue in the two representations have been identical. To the contrary, "[a] 'substantial relationship' exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation." *Id.* at 239 (internal quotations omitted).

I think it is clear that Updike's prior representation of Mountbrook (with whom it dealt through Killilea) is substantially related to its proposed representation of the Trustee in this action. To begin with, Mountbrook is plainly a "former client" of Updike within the scope of Rule 1.9, and its interests are undoubtedly inimical and adverse to those of the Trustee (and were at the time that Updike agreed to the representation).

Nor is there any doubt that the bankruptcy proceeding for 151 Milbank is factually related to the consolidated case that is before me. Indeed, the Trustee is actively pursuing

---

[3] Because the application of the former-client conflict rule may be resolved in this action by way of my evaluation of what confidential factual matters would normally have been disclosed to one's counsel, I need not try to piece together what was actually disclosed to Updike or to take up Killilea's invitation to submit for *in camera* review the materials that she shared with Updike as counsel to Mountbrook in the 151 Milbank bankruptcy proceeding. Doc. #128 at 5 n.1. *See also Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269 (7th Cir. 1983) (discussing hazards of engaging in inquiry of what information was actually disclosed).

9

discovery from the defendants in this case for "[d]ocuments and communications concerning the source of funds, direct and indirect, used to purchase 151 Milbank, Greenwich, CT." *Coan v. Dunne*, 2018 WL 6616820, at *6 (D. Conn. 2018), *on reconsideration in part*, 2019 WL 117604 (D. Conn. 2019).

All that leaves for me to consider is whether there is "a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Conn. R. Prof. Cond. 1.9 commentary. Viewing the facts from what would normally be disclosed between counsel and client, I think it is clear that there is a substantial risk that confidential factual information that would normally have been disclosed by Mountbrook to Updike would materially advance the Trustee's position in this action now before me.

Even accepting the Trustee's claim that I should confine my inquiry solely to the limited scope of Updike's services for Mountbrook, the facts show that Updike was hired by Mountbrook to protect its interests for purposes of a proceeding involving the adequacy of the bankrupt 151 Milbank's disclosure statement. *See* 11 U.S.C. § 1125(a)(1) (defining how to evaluate whether there is "adequate information" disclosed to "include information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records," as well as providing that "in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest").

As the Trustee acknowledges, the disclosure statement explicitly acknowledged the existence of the Killilea adversary proceeding which is now a part of the consolidated action

before me, and proceedings to determine the adequacy of a disclosure statement are meant to ensure that the debtor's creditors sufficiently understand a debtor's plan of reorganization in order to support or oppose the plan. Doc. #151 at 15–16. In order to decide if notice of the Killilea adversary proceeding in the disclosure statement—as well as any other factors relevant to Mountbrook's potential rights in the 151 Milbank bankruptcy—was adequate to inform Mountbrook and protect its rights, it would be normal to consider the degree to which the adversary proceeding would affect Mountbrook's interests, and this in turn logically entails some account and assessment of the very nature and merits of the adversary proceeding.

It would be natural for a client in such circumstances to disclose to counsel confidential facts about the lawsuit that must be evaluated (here, the fraudulent transfer allegations made in the adversary proceeding), including the basis for a client's defense against such claims. Indeed, the importance of the Killilea adversary proceeding to the prior representation of Mountbrook is highlighted by the Trustee's acknowledgement that "Mountbrook USA would not receive any money on account of its contracting work on the luxury condo project unless and until the claims against in in the Killilea Adversary are resolved in its favor." Doc. #151 at 13. Having retained and trusted Updike for purposes factually related in part to the Killilea adversary proceeding, it is hard to see why Mountbrook should now be burdened with Updike switching sides to join forces with the Trustee against it.

The Second Circuit has instructed that because of "the serious impact of attorney disqualification on the client's right to select counsel of his choice," an order of disqualification "should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint," and it has further noted that a "risk [of trial taint] is encountered when an attorney represents one client in a suit against another client . . . or

might benefit a client in a lawsuit by using confidential information about an adverse party obtained through prior representation of that party." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981); *see also Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005) ("One recognized form of taint arises when an attorney places himself in a position where he could use a client's privileged information against that client."). I conclude that Updike's unconsented-to representation of the Trustee would violate Rule 1.9(a) of the Connecticut Rules of Professional Conduct and correspondingly pose a significant risk of trial taint to warrant Updike's disqualification.[4]

I decline to address the claim of conflict of interest arising from Updike's prior representation of Newinvest Holding International Ltd. Although defendants Killilea, Mountbrook, and Wahl have submitted an opposition along with an email of dubious provenance from someone named "Sotia Dimosthenous" purporting to be "Legal Consultant to Trust Dept." and purporting to state Newinvest's objection to Updike's representation of the Trustee, Newinvest has not filed an appearance through counsel in this action to assert its rights. In the absence of a proper appearance in this action, Newinvest has no assertable rights to claim here, and none of the named defendants have otherwise established their own standing to object to Updike's participation in this case for reasons relating to its prior representation of non-party Newinvest. *See Feldman v. Feldman*, 2013 WL 2501988, at *2 (Conn. Super. Ct. 2013).

---

[4] It is undoubtedly true as the case law suggests that not every violation of the ethics rules warrants disqualification of counsel. But unlike the conflict-of-interest rules, *see* Conn. R. Prof. Cond. Rules 1.7 and 1.9, many of the ethics rules proscribe certain actions by counsel (such as not to make false statements or to engage in communications with represented parties, *see* Conn. R. Prof. Cond. R. 4.1 and 4.2), and these rules do not altogether purport to preclude counsel from representing certain clients under certain circumstances. On the other hand, where there is conduct involving an ethics rule that outright bars certain representation relationships, it is hard to see why a court would not conclude that a representation in violation of such an applicable rule does not taint the proceedings to warrant disqualification. Put differently, it would be odd for me to conclude that Updike's representation of the Trustee violates Rule 1.9 but that there is no sufficient risk of trial taint to warrant Updike's disqualification, such that Updike could proceed to represent the Trustee in this action, only one day to face the prospect of disciplinary proceedings by the Statewide Grievance Committee or this Court for violating Rule 1.9.

*AMOSS—prospective client conflict of interest*

Defendants also argue that AMOSS should be disqualified as the Trustee's counsel. To the extent that defendants seek relief against the Trustee's use of AMOSS for purposes of proceedings in Ireland, my role is not to regulate the conduct of foreign counsel in foreign proceedings that are not before me. Defendants have not shown that I have some kind of free-ranging international authority to enforce the Irish rules of professional conduct against foreign counsel like AMOSS.

To the extent that defendants otherwise complain that AMOSS's participation would amount to a violation of the Connecticut Rules of Professional Conduct, they have failed to adduce facts to show any violation. Because there is no allegation that AMOSS ever represented any of the defendants (as distinct from having a conversation about the possibility), defendants must rely on the "prospective client" disqualification rule (Conn. R. Prof. Cond. R. 1.18(c)) rather than the "former client" disqualification rule (Conn. R. Prof. Cond. R. 1.9(a)). The prospective-client rule requires disqualification only "if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." Conn. R. Prof. Cond. R. 1.18(c). Defendants allege a one-time meeting between a consultant for Killilea and AMOSS Solicitors, but they do not carry their burden to show confidential information that was actually disclosed and that could be significantly harmful to them if used or disclosed by AMOSS in subsequent proceedings. Accordingly, there is no basis for the Court to preclude the Trustee from retaining AMOSS Solicitors for assistance in Ireland and as may be necessary for the conduct of proceedings before this Court.

## CONCLUSION

For the foregoing reasons, the Trustee's motion to retain the law firm of Updike, Kelly, & Spellacy, P.C. (Doc. #102) is DENIED, and the Trustee's motion to retain AMOSS Solicitors (Doc. #104) is GRANTED.

It is so ordered.

Dated at New Haven this 22d day of January 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge