UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICHARD M. COAN *et al.*,
    *Plaintiffs*,

v.

SEAN DUNNE *et al.*,
    *Defendants*.

No. 3:15-cv-00050 (JAM)
Adv. Proc. No. 15-5019 (JAM) (consol.)

**ORDER GRANTING DEFENDANTS' MOTION TO QUASH**

Defendants Gayle Killilea, Mountbrook USA, LLC, Wahl, LLC, and TJD21, LLC move to quash a subpoena served by plaintiff Trustee Richard M. Coan on the law firm of Heagney Lennon & Slane LLP (HLS). Defendants principally argue that the subpoena improperly demands the production of privileged materials, and the Trustee counters that the documents fall within the scope of the crime-fraud exception. Because I conclude that the Trustee has not established a sound basis for application of the crime-fraud exception, I will grant defendants' motion to quash to the extent that the subpoena demands production of privileged information.

### BACKGROUND

This is a financial fraud case that is related to bankruptcy proceedings in Connecticut and the Republic of Ireland involving real estate developer Sean Dunne. *See Coan v. Dunne*, 2019 WL 302674, at *1-*2 (D. Conn. 2019) (generally describing the history of this case). The law firm of HLS is based in Greenwich, Connecticut, and represented one or more of the defendants as counsel in connection with the acquisition and conveyance of certain real estate properties in Greenwich including properties at 22 Stillman Lane and 42 Bote Road. An attorney from HLS acted as trustee in both of those purchases. Doc. #244-2; Doc. #244-3. HLS also incorporated defendant Wahl, LLC, which defendant Killilea owns. Doc. #244-5. As trustee, HLS conveyed

1

22 Stillman Lane to Wahl. Doc. #244-5. HLS acted as authorized signatory for Wahl when it issued a mortgage to Newinvest, a nonparty to this suit that the Trustee alleges defendants control. Doc. #244-6.

On January 18, 2019, the Trustee served a subpoena on HLS pursuant to Federal Rule of Civil Procedure 45. *See* Doc. #205-1. The subpoena requests the production of 27 different categories of documents, including virtually all communications between HLS and defendants, all documents concerning the properties that are at the center of this litigation, all documents concerning defendants' finances, and all communications concerning defendants with numerous third parties—including defendants' foreign counsel. Doc. #205-1 at 11-13.

On its face, the subpoena demands the production of every single attorney-client privileged communication between HLS and any of the defendants. For one among many examples, Item #5 of the subpoena demands the production of "[a]ll directives and/or instructions made to you by Sean Dunne, Gayle Killilea, John Dunne, or the Dunne Entities concerning any business or financial transaction related thereto." Doc. #205-1 at 11. Similarly, Item #10 demands the production of "[a]ll communications between you and Sean Dunne, Gayle Killilea, John Dunne, or the Dunne Entities concerning the Greenwich Properties, including, but not limited to, emails, calendars, diaries, notes, reports, or memoranda concerning or reflecting any conversation, telephone call, or meeting of whatever kind between you and Dunne, Killilea, John Dunne, and/or the Dunne Entities." *Ibid.* Many of the other requests demand "communications" on varied subject matters between defendants and their attorneys at HLS.

Defendants move to quash the subpoena principally on the ground that it seeks privileged information and is unreasonably broad. Although defendants also argue that the subpoena did not provide a reasonable time for compliance, I understand this objection to be moot insofar as it is

2

represented that HLS has produced nonprivileged documents. Doc. #244 at 4 n.3. As to the privileged documents, the Trustee maintains that the crime-fraud exception applies.

## DISCUSSION

Under Federal Rule of Civil Procedure 45, the Court is required to quash or modify a subpoena if the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or if the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). In addition, under Rule 26, the Court has the authority to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or expense." Fed. R. Civ. P. 26(c).

As a preliminary matter, the subpoena plainly requests information protected by the attorney-client privilege and the work-product privilege. The attorney-client privilege protects communications (1) between a client and his or her attorney, (2) that are intended to be, and in fact were, kept confidential, (3) for the purpose of obtaining or providing legal advice. *See United States v. Krug*, 868 F.3d 82, 86 (2d Cir. 2017). The work product privilege extends to documents prepared by counsel in anticipation of litigation, so that "a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015) (internal quotations omitted).

Both these privileges are subject to a "crime-fraud" exception. *See In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999). "[A] party seeking to invoke the crime-fraud exception must at least demonstrate that there is probable cause to believe that a crime or fraud has been

3

attempted or committed and that the communications were in furtherance thereof." *Id.* at 70 (internal quotations omitted).[1]

As the Second Circuit has cautioned, "[g]iven that the attorney-client privilege and work product immunity play a critical role in our judicial system," the crime/fraud and other exceptions "should not be framed so broadly as to vitiate much of the protection they afford." *Roe*, 168 F.3d at 71. For this reason, the crime/fraud exception "applies only when the communications between the client and his lawyer further a crime, fraud or other misconduct," and "[i]t does not suffice that the communications may be related to a crime," because "[t]o subject the attorney-client communications to disclosure, they must actually have been made with an intent to further an unlawful act." *United States v. Jacobs*, 117 F.3d 82, 88 (2d Cir. 1997), *abrogated on other grounds by Loughrin v. United States*, 573 U.S. 351 (2014).

The Trustee argues that the documents he seeks "were in furtherance of the Dunnes' global scheme to hinder, delay and defraud Debtor's creditors." Doc. #244 at 2. To support this sweeping claim, the Trustee devotes a total of four pages to allegations of facts that are sometimes supported by citations to primary source documents and sometimes supported by no citation at all. Doc. #244 at 4-7. The Trustee then confuses his presentation with some needless repetition and a sprinkling of a few more facts and citations in later parts of his memorandum. Doc. #244 at 11-14.

---

[1] In the criminal case context, the Second Circuit has articulated a "probable cause" standard for invocation of the crime/fraud exception, but some courts have expressed concern that this standard should not apply in the civil case context because it "could lend itself to such capacious application as to virtually swallow the attorney-client privilege in any case in which a colorable fraud claim is asserted." *In re Fresh Del Monte Pineapple*, 2007 WL 64189, at *3 (S.D.N.Y. 2007). The proper standard in the civil case context may require a showing of crime or fraud by at least a preponderance of the evidence. *See, e.g.*, *Secs. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 319 F.R.D. 100, 107 (S.D.N.Y. 2017) (collecting cases and citing *In re Napster*, 479 F.3d 1078, 1093 (9th Cir. 2007), to discuss preponderance threshold). Because I conclude that the Trustee has not met even the probable cause standard as to the vast range of communications he demands, there is no need for me to decide if a higher standard should apply in the civil case context.

According to the Trustee, one of the HLS lawyers (Thomas Heagney) took title as trustee to the properties at 22 Stillman Lane and 42 Bote Road in January 2011, and then in May 2011 Heagney conveyed the property to Wahl. Doc. #244 at 4-5. In August 2012, Heagney encumbered 22 Stillman Lane with a mortgage by Newinvest, which was a purported third-party lender that allegedly loaned funds to Wahl. *Id.* at 5. The Trustee alleges that this mortgage was fraudulent, because Gayle Killilea and John Dunne actually financed and controlled Newinvest, and the mortgage was placed on the property about one month after NALM commenced the state court action naming 22 Stillman Lane. *Id.* at 10-11.

According to the Trustee, because of HLS's "extensive communications" with Dunne's foreign law firm in Gibraltar, "HLS either knew *or should have known* (i) that Newinvest had not lent funds to Wahl in any arms-length transaction and (ii) that the purported loans secured by the Mortgage were not third-party loans but originated with the Dunnes' offshore insider entities." *Id.* at 6 (emphasis added). The Trustee places particular reliance on a single email that was sent from the Gibraltar law firm to Thomas Heagney in June 2011 stating: "I understand that NewInvest Holding International Limited is to lend Gayle Killilea Dunne a further USD 340,000 in connection with the 42 Bote Road property." *Ibid.* The Trustee further relies on a client trust ledger that has already been produced by HLS showing that millions of dollars were deposited by Newinvest and disbursed to Mountbrook through HLS client fund accounts. *Id.* at 7. Lastly, the Trustee relies on what he claims was a false assurance to him in April 2015 by defendants' counsel (not HLS) that Newinvest was an unrelated third-party lender. *Ibid.*

Based on the convoluted and fragmentary factual basis set forth by the Trustee, I conclude that the Trustee has fallen well short of establishing probable cause to believe that any of the communications between defendants and HLS were within the scope of the crime/fraud

5

exception. For the most part, the Trustee's allegations rely on innuendo to be drawn because of the timing or amount of funds that went back and forth between various bank accounts. The facts that any of the defendants used HLS's services, that HLS engaged in international money transfers, that HLS corresponded with a foreign law firm, and that properties were bought, sold, or encumbered do not by themselves establish probable cause to believe that a crime or fraud occurred.

It will be for the jury to decide at trial whether the Trustee can substantiate any of his claims of fraud. I am reluctant to pre-judge this issue at the potential expense of the sanctity of the attorney-client and work-product privileges, especially where—as here—the claim of crime or fraud appears to turn on circumstantial and highly contestable inferences to be drawn from a complex document trail. Perhaps the Trustee can make a convincing case of fraud at trial, but the Trustee's memorandum in opposition to the motion to quash does not do so.

More troubling still is the fact that the Trustee does nothing to show that *all* of the ostensibly privileged communications and documents that he demands in the subpoena are within the scope of the crime-fraud exception. This blunderbuss subpoena commands the production of just about *every* communication that ever took place between HLS and any of the defendants (as well as with many third parties). But the Trustee's alleged factual basis for invocation of the crime/fraud exception focuses almost entirely on a single property in Greenwich at 22 Stillman Lane. There is scarce mention in the Trustee's memorandum of any facts to justify production of privileged documents relating to any number of the many persons, entities, or properties named in the subpoena. Only two of the subpoena's 27 document requests even mention "the Greenwich Properties," a term that itself is defined to include not just 22 Stillman Lane but eight more property addresses as well. Doc. #205-1 at 8, 11-12.

As the Second Circuit has noted, "the crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud," for "[i]f it did, the privilege would be virtually worthless because a client could not freely give, or an attorney request, evidence that might support a finding of culpability." *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995). "Instead, the exception applies only when the court determines that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud." *Ibid.* (emphasis in original). And this means that there must be probable cause to believe that "the *particular* communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity." *Ibid.*; *see also In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 7574460, at *4 (S.D.N.Y. 2015) (same).

Therefore, it would be error for me to conclude that the crime/fraud exception applies based on no more than "a finding that 'these documents, read collectively, have the real potential of being relevant evidence of activity in furtherance of a crime.'" *Roe I*, 68 F.3d at 40. The attorney-client and work-product privileges are entitled to careful protection, and the Trustee has not made the particularized showing to justify the crime/fraud exception for the vast range of otherwise privileged documents he seeks. And this is to say nothing of the Trustee's decision to unload this subpoena on HLS so near in time to trial, which is an additional factor that weighs in favor of quashing the subpoena's demand for documents subject to a presumptive claim of privilege.

## CONCLUSION

For the foregoing reasons, defendants' motion to quash (Doc. #205) is GRANTED as to any documents that are subject to a valid claim of attorney-client or work-product privilege.

7

It is so ordered.

Dated at New Haven this 8th day of April 2019.

                                                  /s/ *Jeffrey Alker Meyer*
                                                Jeffrey Alker Meyer
                                                United States District Judge