RICHARD M. COAN,
*Plaintiff-Trustee,*

v.

SEAN DUNNE *et al.*,
*Defendants*.

No. 3:15-cv-00050 (JAM)
Adv. Proc. No. 15-5019 (JAM) (consol.)

## ORDER DENYING TRUSTEE'S MOTION FOR CONTEMPT AND IMPOSING SANCTIONS PURSUANT TO FED. R. CIV. P. 37(e)(1)

Plaintiff-Trustee Richard M. Coan has moved for contempt and discovery sanctions against debtor-defendant Sean Dunne. Doc. #70. In essence, the Trustee accuses Dunne of willful failure to preserve and produce emails from certain email accounts as well as other discovery misconduct.

I referred the Trustee's motion to U.S. Magistrate Judge Robert M. Spector, who pursuant to 28 U.S.C. § 636(e)(6)(B) entered an order certifying facts to support a finding of contempt and recommended a range of sanctions including an award of attorney's fees and costs, an adverse inference instruction, and a finding of waiver of privilege. *See* Doc. #225. Now before me are Dunne's objections to the Magistrate Judge's ruling, as well as objections from the remaining defendants. For the reasons I explain below, I will deny the Trustee's motion for contempt but I will impose sanctions on Dunne for his discovery misconduct pursuant to Federal Rule of Civil Procedure 37 and the Court's inherent authority.

### BACKGROUND

This is a financial fraud case that is related to bankruptcy proceedings in Connecticut and the Republic of Ireland involving real estate developer Sean Dunne. *See Coan v. Dunne*, 2019

WL 302674, at *1-*2 (D. Conn. 2019) (generally describing the history of this case). The facts and posture of this case are well-known to the parties. The pertinent facts laid out here are generally taken from those certified by Judge Spector to which the parties have not objected but as supplemented by consideration of additional factual submissions that have been filed subsequent to Judge Spector's ruling.

Since 2010, Dunne has maintained several email accounts. Dunne claims that in 2011 or 2012 he stopped using two of these accounts: seanpa@mountbrook.ie and seanbb@mountbrook.ie. Doc. #225 at 17. Dunne swears that he stopped using the seanpa@mountbrook.ie account because his personal assistant had stopped working for him, and that he closed the seanbb@mountbrook.ie account because the Mountbrook server had been functioning poorly while he was in the United States, consequently frustrating his email use. Doc. #274-1 at 36 (¶¶ 8-9).

Dunne and his agent James Ryan both swear that the Mountbrook server did not provide for cloud-based email access; these emails were stored on a private server, and Ryan abandoned the server in a Dublin building that Dunne gave up to a creditor in June 2013. Doc. #274-1 at 37 (¶¶ 9-11), 86-87 (¶¶ 1-3). Dunne does not possess the server and does not have access to the two Mountbrook email accounts that were stored on the server. *Id.* at 37 (¶ 10).

Dunne transitioned from the private-server Mountbrook email service to Google email. *Id.* at 36-37 (¶ 9). Google's "Gmail" service is a web-based email service that does not involve storage of emails exclusively on private servers. The first Gmail account that Dunne opened, in approximately May 2011, was seandunnebb@gmail.com. *Id.* at 37 (¶ 9). According to documents obtained by the Trustee from third party sources, Dunne used the seandunnnebb@gmail.com account to communicate with Seamus Reddan, his agent for the sale

of Walford, a large property in Ireland that the Trustee alleges Dunne fraudulently transferred. Doc. #225 at 19; *see* Doc. #189 at 32 (¶¶ 145-50) to *Coan v. Killilea*, No. 15-05019 (Bankr. D. Conn. 2016).

In June 2013, Google informed Dunne that there had been an attempt to hack the account, and so Dunne closed this account and created a second Gmail account: seandunne365@gmail.com. *Id.* at 37 (¶ 11). According to Dunne, concerns and notifications about hacking continued, which caused him to close this second account in approximately December 2013 and then to open a third Gmail account that he continues to use to this day. *Ibid.*

To corroborate his claim about hacking concerns, Dunne has produced a copy of a Google notification that was sent to him in June 2013 advising him that his seandunnebb@gmail.com account had been locked because of too many log-in attempts and his contemporaneous forwarding of this advisory to a colleague stating: "Vinny, call me later as somebody trying to hack my email account. May need to close it down:" Doc. #274-1 at 89. Similarly, he received another warning from Google to the seandunne365@gmail.com account on December 16, 2013. *Id.* at 91.

In short, Dunne had four email accounts that were either discarded or closed by Dunne by the end of 2013. By that point in time, Dunne had been sued in 2012 in Connecticut state court by NALM and had also filed for bankruptcy in Connecticut in March 2013. In June 2013, Dunne was subject to formal, on-the-record interrogation by the Trustee at which time he was asked and answered questions about his email accounts. Doc. #274-1 at 17-27. He was questioned again in December 2013 at which time he expressed concern that "somebody was hacking my e-mail account." *Id.* at 31.

Despite the pendency of the NALM state court action, the federal bankruptcy, and formal questioning in 2013 about the emails by the Trustee, neither the Trustee nor any other creditor made any request to Dunne in 2012 or 2013 to preserve his emails. It was not until several years later in 2016 that the Trustee first served a discovery demand for Dunne's emails.

On July 25, 2016, the Trustee subpoenaed Dunne for a wide range of documents including his emails. Doc. #225 at 14. In addition, this was the first discovery request for documents related to Walford. *Id.* at 20. When Dunne did not comply with the July 2016 subpoena, the Trustee moved to compel production of documents that the July 2016 subpoena requested, and by February 2017, the Bankruptcy Court had ordered Dunne to produce responsive documents and file an affidavit certifying that all responsive documents in Dunne's possession and control had been produced to the Trustee. *Id.* at 14-15. Dunne then certified in February 2017 that he had conducted a good faith search to find all responsive documents, and that he had provided them for production. *Id.* at 15. It stands to reason that, because the email accounts at issue here were either closed or unavailable to Dunne by the end of 2013, it was not false as to these email accounts for Dunne to have certified in February 2017 that he had conducted a good faith search to locate and produce documents responsive to the subpoena but without producing these emails.

The Trustee renewed his motion to compel and for contempt in July 2017, and in August 2017, the Bankruptcy Court found Dunne in contempt and ordered him to produce all documents responsive to the July 2016 subpoena, including a list of all email accounts he had used since the start of 2010. *Ibid.* The Bankruptcy Court also ordered the Trustee to serve a copy of the order on Google and AT&T so that those companies could produce emails from two of Dunne's email accounts with Dunne's cooperation. *Ibid.* Dunne then appealed the Bankruptcy Court's contempt

order. *Ibid.* While Dunne's appeal was pending, Google informed the Trustee in November 2017 that its users could obtain and produce account content themselves or by using the Google Takeout feature. *Ibid.*

The record, however, is not clear whether this feature existed in 2013 at the time that Dunne closed two of his Gmail accounts or whether this feature would have allowed Dunne in 2017 to recover email accounts that had been closed many years before. To the contrary, Google further advised the Trustee in January 2018 that "[t]he seandunnebb@gmail.com account was deleted by the user and purged by Google in 2013." *Id.* at 18-19. The reasonable inference from this record is that Dunne could have done nothing at the time he was served with the July 2016 subpoena or later to recover the seandunnebb@gmail.com and seandunne365@gmail.com accounts that he had closed in 2013. Nevertheless, in December 2017, the Trustee moved in the Bankruptcy Court for further contempt against Dunne on the ground that Dunne had neither used Google Takeout, nor executed a consent order that Google had provided him, nor taken any further steps to produce email account content. *Id.* at 15-16.

In January 2018, the Bankruptcy Court entered an order finding Dunne in further contempt, ordering him to submit a sworn affidavit or declaration regarding the document requests he had not yet complied with, and to file a privilege log of any withheld documents or communications that would allow the parties to assess Dunne's claims of privilege. *Id.* at 16. Dunne filed an unsworn certification on February 9, 2018, listing his email accounts at seanpa@mountbrook.ie; seanbb@mountbrook.ie; seandunnebb@gmail.com; seandunne365@gmail.com; and seandunne366@gmail.com. *Ibid.* He claimed he only had access to the seandunne366@gmail.com account, from which he produced 1,800 pages of email. *Ibid.*

On February 23, 2018, Dunne produced to opposing counsel but did not file with the Bankruptcy Court a privilege log listing 2,518 documents as privileged. *Ibid.* Although it appears that Dunne was supposed to and should have filed this log with the Bankruptcy Court, it is hard to understand the Trustee's claim of prejudice in light of the fact that the Trustee timely received a copy of this privilege log.

The District Court affirmed the Bankruptcy Court's contempt findings on September 27, 2018. *Ibid.*; *see In re Dunne*, 2018 WL 4654698 (D. Conn. 2018) (Shea, J.). Judge Shea affirmed the finding that Dunne had failed to comply with the July 2016 subpoena, 2018 WL 4654698 at *5, affirmed the finding that Dunne was unable to show why he was unable to produce records from all of his email accounts, *id.* at *7, *9, and affirmed the Bankruptcy Court's order directing the Trustee to subpoena Google and AT&T, *id.* at *9. Judge Shea remanded for consideration whether Dunne had acted in bad faith to warrant an award of attorney's fees. *Id.* at *8-*9.

In fall 2018, Dunne hired an IT consultant to ensure that the seandunne366@gmail.com account had been fully searched. Doc. #225 at 21. The parties have since disputed the appropriate search terms for the IT consultant to use. *See* Doc. #304 at 24-25; Doc. #329 at 10.

On January 2, 2019, other defendants produced numerous emails from the seandunne366@gmail.com account that Dunne had not produced. Doc. #225 at 21. The Trustee has also learned that Dunne regularly communicates via text, and Dunne has conceded that while the July 2016 subpoena requests text messages, he automatically deleted his texts and so has only produced texts that postdate September 1, 2018. *Ibid.* On January 18, 2019, Dunne filed revised and supplemental privilege logs with the Court. *Id.* at 22.

Judge Spector concluded that Dunne's production continued to be incomplete, that his privilege logs continued to list nonprivileged material, and that Dunne had unacceptably delayed

in retaining an IT consultant. *Id.* at 24. Judge Spector then concluded that on this basis Dunne should be held in further contempt, and went on to consider appropriate sanctions. Judge Spector recommended that Dunne be held responsible for attorney's fees involved with the Trustee's contempt motion, the cost of searching Dunne's remaining electronically stored information for responsive and nonprivileged documents to the July 2016 subpoena, an adverse inference about Walford arising from Dunne's deleted emails, and a waiver of Dunne's privilege as to any new documents discovered between now and trial. *Id.* at 25-30.

Since both Judge Shea's and Judge Spector's prior rulings, Dunne retained new counsel who has substantially supplemented the factual record to shed light on on Dunne's actions and his state of mind with respect to his closing of the email accounts. Docs. #274, #329. It is this additional information that leads me in this ruling not to view Dunne's actions quite as unfavorably as they may have been viewed by both Judge Shea and Judge Spector. This is not to excuse Dunne for his prior failure to comply with discovery demands, but my focus remains on evaluating Dunne's actions and state of mind in light of the current record before me.

## DISCUSSION

The Trustee has moved for the Court to hold Dunne in contempt pursuant to Federal Rules of Civil Procedure 37 and 45 as well as under the Court's inherent powers. Doc. #70 at 1. Federal Rule of Civil Procedure 37(b)(2)(A) empowers the Court to issue discovery sanctions in its discretion "[i]f a party . . . fails to obey an order to provide or permit discovery." Among the permissible sanctions a court may impose are treating as a contempt of court the failure to obey a discovery order. *Id.* at 37(b)(2)(A)(vii). Similarly, "a valid subpoena is a legal instrument, non-compliance with which can constitute contempt of court." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991).

Dunne has objected to Judge Spector's certified facts and recommendations on numerous grounds. The remaining defendants, who were not the subject of the Trustee's contempt motion and who Judge Spector does not recommend finding in contempt, have objected principally on the ground that they would be prejudiced by the Trustee's request for a mandatory adverse inference instruction at trial. Doc. #275.

### *Contempt*

I will deny the Trustee's motion for contempt. A court may sanction a party's failure to obey a discovery order as a contempt under Federal Rule of Civil Procedure 37(b)(2)(A)(vii), while the appropriate court "may hold in contempt a person who, having been served, fails without adequate excuse to obey [a] subpoena or an order related to it," Fed. R. Civ. P. 45(g). Under 28 U.S.C. § 636(e)(6), a magistrate judge may certify facts constituting civil contempt to the district judge. The district judge must then "make an independent determination of the facts certified and consider any additional evidence." *Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*, 2018 WL 5629900, at *1 (S.D.N.Y. 2018). "To establish contempt for failure to obey a court order, the movant must show (1) the order the alleged contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the alleged contemnor has not diligently attempted to comply in a reasonable manner." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 111 (2d Cir. 2015).

In view of the expanded record I have before me, I am not satisfied that the Trustee has proven by clear and convincing evidence that Dunne knowingly and willfully failed to comply with a court order. Indeed, as I discuss below, Dunne has introduced evidence that makes it inconclusive at this stage whether he willfully spoliated his emails. Similarly, Dunne has since diligently attempted to purge the noncompliance with prior orders to produce privilege logs and

other documents, making a finding of contempt unnecessary here, especially in light of the prejudice that finding would cause to the remaining defendants who are not responsible for Dunne's compliance with court orders.

But while Rule 45 sanctions begin and end with contempt, a contempt sanction is only one form of discovery sanction available under Rule 37. And although the Trustee has not proven by clear and convincing evidence that Dunne acted contumaciously, it is still clear that Dunne negligently failed to preserve relevant electronic information and that he should be subject to appropriate sanctions as allowed under Rule 37. Accordingly, while I will deny the Trustee's motion to hold Dunne in contempt, I will impose measures under Rule 37 to cure the prejudice the Trustee has suffered.[1]

### Rule 37 spoliation sanctions

Federal district courts have "broad discretion" in deciding whether and how to sanction parties for spoliation of evidence. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). To obtain sanctions based on the spoliation of evidence, the movant must show "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

---

[1] The Trustee moved for contempt in part under Rule 37. Both the Trustee and Dunne have argued that their preferred version of Rule 37(e) governs the alleged spoliation at issue in this case. *See* Doc. #274 at 27-30; Doc. #304 at 17-18. While Judge Shea ruled that Rule 37(a)(5) sanctions were not appropriate in response to Dunne's actions surrounding the July 2016 subpoena in the adversary proceeding to which Dunne was not a party, *In re Dunne*, 2018 WL 4654698, at *8, that is because Rule 37 generally only applies to the parties to a case, *ibid.* Because Dunne is a party to the consolidated proceedings before me now, the question of Rule 37(e) sanctions involves Dunne's duty to preserve documents in anticipation of that litigation, and because the parties have both argued for and not objected to the application of Rule 37 to Dunne, I find it appropriate to consider Rule 37 as applied to Dunne here.

Rule 37 was amended in 2015 to address the potential consequences when a party destroys electronically stored information such as emails:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>> (A) presume that the lost information was unfavorable to the party;
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

As Judge Bolden has observed, the 2015 amendment to Rule 37(e) "made a significant change to the standards governing spoliation issues" by now requiring a court to conclude that "the destroying party 'acted with the intent to deprive another party of the information's use in the litigation'" before the court may impose the most severe of sanctions such as entry of an adverse inference instruction or entry of default judgment. *See Learning Care Grp., Inc. v. Armetta*, 315 F.R.D. 433, 439-40 (D. Conn. 2016). Prior to the 2015 amendment, a party need only have shown that the destroying party was negligent in order to have the benefit of an adverse inference instruction. *Id.* at 440.

Seeking the benefit of the prior lower standard, the Trustee argues that the 2015 amendment does not apply here. I do not agree. When the Chief Justice transmitted to Congress the proposed amendments to the Federal Rules in April 2015, he included an order providing that the amendments would govern all actions commenced after December 1, 2015, as well as all actions commenced before that date insofar as doing so would be just and practicable. 2015 U.S. Order 0017; *see also* 28 U.S.C. § 2074(a). In deciding whether it would be just and practicable to

apply the current Rule 37(e) to cases like this one that were commenced before the Rule's effective date, courts look to when the actions underlying the putatively sanctionable conduct took place, when the parties first raised the issue of discovery misconduct, and whether a party would be punished more harshly or would receive inadequate relief under one version of the rule or another. *See, e.g.*, *Learning Care*, 315 F.R.D. at 440; *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 496 (S.D.N.Y. 2016).

Here, I conclude it is just and practicable to apply the current version of Rule 37(e). It is true that Dunne failed to preserve his email accounts in 2012 and 2013, which was before the new version of the Rule came into effect. But because the new Rule 37(e) "does not attempt to create a new duty to preserve," Fed. R. Civ. P. 37 cmte. note (2015), I am not persuaded that there is any injustice in applying the amended version of the Rule to Dunne's conduct that took place before the amended Rule became effective.

Several other factors also favor applying the updated version of the rule. Although the Trustee previously filed motions to compel and for contempt in the bankruptcy proceeding underlying this case in 2013 and 2014, *see* Doc. #225 at 2, the Trustee first raised the issue of Dunne's emails in the wake of the July 2016 subpoena. *See* Doc. #225 at 3-4. Finally, because the amended version of the rule provides adequate relief to the Trustee, he too will not be subject to any inequity under the revised version of Rule 37(e). Accordingly, I will apply the post-2015 version of the Rule.

I understand the amended version of Rule 37(e) to set forth a three-part inquiry. The first is to decide if the rule applies at all—that is, if a party failed to take "reasonable steps" to preserve electronically stored information "that should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e). If so, then the second step is to decide if there has

been "prejudice to another party from loss of the information," in which case the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Lastly, the third step to consider—regardless of prejudice to any other party—is whether the destroying party "acted with the intent to deprive another party of the information's use in the litigation," in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment. Fed. R. Civ. P. 37(e)(2).

I will first consider whether Dunne should have preserved his emails. According to Dunne, although he destroyed the emails after the state court lawsuit and bankruptcy litigation was pending against him, his emails had not been requested from him (and would not be requested from him until about three years after they had been destroyed). He also argues that the initial litigation of 2012 and 2013 did not put Walford at issue, and it was not until the Trustee filed a claim in the adversary proceeding about Walford in 2015 that Walford became relevant.

I am not convinced. It seems clear that Dunne used the email accounts for his business purposes, and as a sophisticated (formerly very wealthy) businessman Dunne should have known that his business-related emails could be of significant consequence to pending or anticipated litigation. Moreover, as to Dunne's claim that he could not reasonably have known as early as 2012 or 2013 that Walford would be at issue in litigation, this argument is contradicted by Dunne's sending and receiving numerous emails at his seandunnebb@gmail.com account in late 2012 discussing Walford and the possibility that NALM would seek to assert a claim on the property. *See* Doc. #303-4; Doc. #303-5; Doc. #303-6.

Determinations about what properties constitute a debtor's assets are often disputed, including disputes about those assets' scope, such as whether a fraudulent transfer has taken

place. *See, e.g.*, *Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 216-18 (2d Cir. 2013). Setting aside the bankruptcy proceedings that Dunne was undergoing in Ireland or the state court case against him, Dunne still should have reasonably anticipated that by putting the scope of his assets at issue by filing for bankruptcy in the United States, communications relevant to determining whether Walford was within that scope would eventually prove relevant to the bankruptcy case. Accordingly, to the extent his emails were relevant to determining whether Walford was one of his assets, he had a duty to preserve them.

Dunne fell short of this duty. While Dunne takes issue with Judge Spector's conclusions about his state of mind in doing so, there is no dispute that Dunne failed to preserve emails that were relevant to his bankruptcy case. "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003). Dunne failed to take "reasonable steps" to preserve electronically stored information "that should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e).

This brings me to the second step of analysis under Rule 37(e)—whether the Trustee has been prejudiced. Dunne claims that even if he improperly failed to preserve his email accounts, doing so caused no prejudice to the Trustee. Doc. #274 at 36-38. I do not agree. To show it has been prejudiced, a discovering party typically needs to show that destroyed evidence would have not only been probative, but also would affirmatively support that party's claim. *See Ungar v. City of New York*, 329 F.R.D. 8, 15 (E.D.N.Y. 2018).

The Trustee has done so here. The Trustee claims that Dunne fraudulently transferred Walford and concealed the transfer. Doc. #189 at 32-33 (¶¶ 145-56) to *Coan v. Killilea*, No. 15-05019 (Bankr. D. Conn. 2016). To establish that claim, the Trustee seeks to show that Dunne

owned Walford and concealed that ownership. *See* Doc. #225 at 19. The Trustee has produced evidence to show that Dunne communicated from his deleted seandunnebb@gmail.com and seanbb@mountbrook.ie accounts to discuss Walford-related issues with Seamus Reddan, and that Dunne used his seandunnebb@gmail.com account to express concerns that NAMA might try to assert a claim over Walford. *Id.* at 19-20; Doc. #303-4; Doc. #303-5; Doc. #303-6. This partial evidence suggests that the contents of Dunne's email accounts would support the Trustee's efforts to show that Dunne controlled and directed the transfer of Walford.

Dunne argues that, for all the evidentiary value his email accounts may have had, the Trustee still is unable to demonstrate prejudice because the Trustee has successfully obtained some of Dunne's emails through discovery on third parties. But this argument merely turns the question of prejudice from one of *kind* to one of *degree*. There can be no assurance that the Trustee has received from third-party sources all of the meaningful emails that could and should have been obtained in the first instance from Dunne. It is equally plausible to conclude that the emails received from third parties are but the tip of a proverbial iceberg of other powerfully probative email communications by Dunne during time periods that are critical in this litigation and that have not emerged from third parties in discovery. As Judge Glasser has observed, "where a party destroys the only evidence that might vindicate their opponent's claims and thereby assures victory for themselves, the deterrent purposes of the spoliation doctrine may well be served by an appropriate sanction, even without affirmative proof as to whether the evidence would have been advantageous to the movant," because "it is well-established that, as between a negligent party and an innocent party, the former has no right to retain the fruits of their misconduct." *Ungar*, 329 F.R.D. at 15.

Accordingly, as to the second step under Rule 37(e), I conclude that there has been prejudice to the Trustee, such that it is appropriate to consider what measures are necessary to cure this prejudice.[2] To help cure the prejudice, the Trustee requests that the Court overrule any authenticity challenge to the email evidence from Dunne's unpreserved email accounts that the Trustee has obtained from third-party sources and may introduce at trial. This seems sensible to me. If the Trustee had received these emails in the first instance from Dunne, then the Trustee would have had little difficulty authenticating them at trial. This measure is therefore fully appropriate to help cure the prejudice occasioned by Dunne's failure to preserve his email accounts. *See Leidig v. Buzzfeed, Inc.*, 2017 WL 6512353, at *14 (S.D.N.Y. 2017).

The Trustee, of course, seeks not just this authentication relief, but also the benefit of a sweeping and mandatory adverse inference that "precludes the Debtor and the other Defendants from refuting the facts that the Debtor concealed his ownership of Walford from 2005 through 2013 and that on March 29, 2013, *i.e.*, the Debtors's bankruptcy petition date, he transferred Walford to an insider entity in a shall transaction to defraud his creditors." Doc. #304 at 5 n.3. In order for me to evaluate this request for a mandatory adverse inference, I must consider the third step under Rule 37(e)(2)—whether Dunne "acted with the intent to deprive another party of the information's use in the litigation," such that the most severe form of sanctions like a mandatory adverse inference instruction would be warranted. *See generally Mali v. Fed. Ins. Co.*, 720 F.3d 387, 393 (2d Cir. 2013) (discussing distinction between mandatory and permissive adverse inference instructions).

I am not persuaded that Dunne failed to preserve his emails for the bad faith purpose of depriving his adversaries from using them in this or related litigation. Although there is some

---

[2] Although the Trustee also complains that Dunne failed to preserve his text messages, *see* Doc. #304 at 21-23, the Trustee has not shown resulting prejudice.

evidence that would support this inference, I think the evidence now before me is inconclusive on the issue of Dunne's spoliative intent.

The Trustee suggests that Dunne's intent to destroy the emails may be inferred from evidence of his overall intent to effectuate fraudulent transfers. I agree that the two inquiries are somewhat related but my focus must remain on what Dunne intended specifically as to the preservation of his emails. Here, I conclude that the Trustee's evidence falls short on the present record.

In an effort to show Dunne's intent to destroy damaging email evidence, the Trustee relies on an email string from February 2013 involving the seandunnnebb@gmail.com account. The email exchange is between Dunne and a senior surveyor agent who was involved with a failed effort to sell Walford. Dunne emailed the surveyor to say that "[a]s this matter is not therefore proceeding can you please compile and return all material which was provided to you in relation to our dealing on the proposed sale/purchase as Gayle wishes to have it in her possession," and "[a]s you know all documents were provided on a confidential basis and Gayle does not wish to have any documents on the matter in third parties possession." Doc. #303-8 at 2. The surveyor responded that "[t]he only information/documentation I got was from Seamus Redden and from recollection it was all via email (unless he can confirm otherwise)." *Id.* at 1. Dunne then replied in relevant part that "[c]an you confirm that you will delete all emails and check your files for hard copies and if you have any, we will collect same today or when ever suits this week." *Ibid.*[3]

---

[3] The Trustee also relies on an email interchange from 2010 about insurance for Walford between Dunne and Reddan in which Dunne stated "It's Queenstown!! Delete ref to W. Tks." Doc. #303-7 at 1. Even if I accept the Trustee's argument that "W" refers to "Walford," because the context for this email is unclear and its occurrence on a date in 2010 that long pre-dated any litigation in this case, this email tells me little about whether Dunne intended at some later time to delete any of his emails to make them unavailable for litigation in this case.

Although the Trustee interprets this email exchange to suggest that Dunne was brazenly devoted to the destruction of emails, I think the exchange is less telling. The issue of the surveyor deleting emails was raised only after Dunne requested the surveyor to return to him the transaction documents and after the surveyor then responded that the only records he had were in email form. Dunne's follow-up reply that requested the surveyor to delete his emails is as consistent with a showing of Dunne's general concern for business confidentiality as it is with a showing of Dunne's intent to make any emails (much less his own emails) unavailable for litigation. All in all, this email exchange may be powerful evidence of Dunne's involvement with Walford but is far less powerful evidence of his state of mind with respect to the destruction of any of his own emails.

Had Dunne actually been subject to a litigation request for any of his emails at the time of this email exchange with the surveyor in February 2013, I might ascribe a more sinister intent to Dunne's "delete all emails" request to the surveyor. But the Trustee waited more than three additional years until July 2016 before seeking any of Dunne's emails.

In my view, there is nothing otherwise implausible about Dunne's stated reasons why his Mountbrook emails were not available (having been left on a server in a building after he was no longer using these email accounts) and why he closed his first two Gmail accounts (having concerns he stated at the time about hacking). These claims have been reasonably corroborated by Dunne in his latest factual submissions. All in all, the present record does not compel me to conclude by a preponderance of the evidence (much less by clear and convincing evidence) that Dunne failed to preserve his email accounts because of an intent to make these email accounts unavailable to his adversaries in litigation.

Accordingly, because the Trustee has not proved Dunne's spoliative intent, I will deny the Trustee's request for a mandatory adverse inference instruction, especially the sweepingly broad inference that the Trustee requests that would effectively direct judgment in the Trustee's favor on the Walford fraudulent conveyance claim, not only as to Dunne but also as to his co-defendants. As his co-defendants point out, the Trustee's requested mandatory adverse inference instruction would exact a crushing penalty on the co-defendants with respect to the single largest asset at issue in this litigation for discovery misconduct that has not been attributed to any of the co-defendants. This is still an additional reason for the Court to reject as unwarranted and disproportionate the Trustee's request for a mandatory adverse inference instruction as to the transfer of Walford. *Cf. SerVaas Inc. v. Mills*, 661 F. App'x 7, 9 (2d Cir. 2016) (district court abused discretion by imposing contempt order on additional party without adequate notice).

All that said, however, it is my duty to consider what additional measures are appropriate to cure the prejudice from Dunne's negligent spoliation of his email accounts. In addition to overruling any authentication objections as discussed above, I further conclude that the Trustee is entitled to the benefit of a *permissive* adverse inference instruction at trial. That is, if the Trustee chooses to present evidence at trial concerning Dunne's failure to preserve his emails, the Court will be prepared to instruct the jury that Dunne was under an obligation to have preserved these emails, that he failed to do so, and that, if the jury concludes on the basis of all the trial evidence and testimony that Dunne acted with intent to deprive the Trustee or creditors from access to his emails, then the jury may conclude that this intent is evidence of his intent to defraud with respect to transactions at issue in this litigation. *See See* Fed. R. Civ. P. 37 cmte. note (2015) (allowing court to determine that Rule 37(e)(2) intent finding should be made by jury with instruction that jury may find lost evidence unfavorable with finding of intent to deprive); *see*

*also Mali*, 720 F.3d at 391-93 (affirming permissive adverse inference instruction); *Cahill v. Dart*, 2016 WL 7034139, at *4 (N.D. Ill. 2016) (jury may determine inference to be drawn from lost law enforcement video to evaluate malicious prosecution claim).

### *Privilege waiver*

Dunne objects to Judge Spector's recommendation that he be found to have waived his privilege as to any documents produced between now and trial, arguing that his privilege log meets the criteria set forth in the District of Connecticut's Local Rules. Doc. #274 at 24-25. It is true that the Bankruptcy Court ordered Dunne to file a privilege log describing the nature of any withheld documents, and that while Dunne timely produced the log to opposing counsel, he did not file a log with the Court until January of 2019. *See* Doc. #225 at 29.

Dunne's privilege log is imperfect, but not contumaciously so. A privilege log should allow a court to make an intelligent decision about whether a privilege exists, and must describe the type of electronically stored information the privilege is asserted over, the general subject matter of the information, the date of the information, and the author and recipient of the information. *See Davis v. Hunt Leibert Jacobson P.C.*, 2016 WL 3349629, at *3-*4 (D. Conn. 2016) (citing D. Conn. L. Civ. R. 26). Dunne's privilege log accordingly includes descriptions of communications as emails, the subject line of those emails, their dates, and the correspondents on those communications. *See* Doc. #186-1. Although Dunne's privilege log does appear to mark as privileged some communications that involved non-lawyer parties, *see, e.g.*, Doc. #186-1 at 16 (designating as privileged email between Sean Dunne, his son John Dunne, and architect Alex Esposito), "courts in some instances have protected communications made by (or to) agents of individuals for the purposes of giving or seeking legal advice." *La Suisse, Société d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 364-65 (S.D.N.Y. 2014) (collecting cases).

Dunne's log appends a list of correspondents and describes how non-lawyers were "copied on emails containing legal advice." Doc. #186-3. While the parties have not fully briefed or discussed whether or not each communication in the privilege log with a non-lawyer is or is not privileged, it is clear to me that for purposes of determining whether Dunne is in contempt or should be sanctioned, the Trustee has not clearly or convincingly shown that any deficiencies in the privilege log fall short of what Dunne needed to produce.

Dunne should have filed his privilege log with the Court in February 2018. Still, he nonetheless produced it to the Trustee at that time, has filed one with the Court now, and should continue to produce documents and log whether any of his continued production is privileged. "Perfect compliance is not required" to avoid a finding of contempt, *Heritage of Pride, Inc. v. Matinee NYC Inc.*, 2014 WL 3703871, at *1 (S.D.N.Y. 2014), and Dunne's compliance—though belated—is reasonable enough under the circumstances here not to warrant a finding of contempt.

By the same token, I do not find Dunne's conduct to warrant a waiver of privilege even absent contempt. *See* Fed. R. Civ. P. 26(b)(5) cmte. note (1993) (noting that "[t]o withhold materials without [notice of a privilege claim] . . . may be viewed as a waiver of the privilege"). Unlike the offending party in *Davis*, Dunne produced a privilege log, even though he did not timely file it with the Court. *See* 2016 WL 3349629 at *3-*4. Moreover, I am concerned that to the extent Dunne engaged in privileged communications with and acted as an agent of other defendants in this action, a finding that Dunne waived his privilege could adversely affect their privilege claims even if they did not engage in any discovery misconduct. *See* Doc. #275 at 15 & n.5. Accordingly, I will not find that Dunne has waived the attorney-client privilege as to any documents at this time.

Nevertheless, I have concerns about documents for which Dunne has claimed the attorney-client privilege but that were sent by or received by non-lawyers. As to any documents in the privilege log that Dunne claims to be subject to protection under the attorney-client privilege and which were copied to any non-lawyer (not including any person working as an employee of a law firm), Dunne shall disclose each such document to Judge Spector for *in camera* review within 7 days of this order. For each such document provided to Judge Spector, Dunne's counsel shall furnish on a separate cover page an individual and detailed description for Judge Spector's consideration of (1) who the non-lawyer is, (2) why the non-lawyer's sending or receipt of the document was necessary to the giving or receiving of legal advice, (3) how the communication at issue reflects the giving or receiving of legal advice (as distinct from business advice), and (4) a certification that the document has not been otherwise disclosed to any other third party in a manner that defeats an expectation of confidentiality.

### *Remaining deficiencies in production*

The Trustee takes issue with Dunne's remaining production in response to the July 2016 subpoena, which the Trustee maintains is insufficient. *See* Doc. #70 at 18-23; Doc. #304 at 21-26. The gravamen of the Trustee's grievance is that—as numerous orders from the Bankruptcy Court found and as the District Court affirmed—Dunne has continued to fail to comply with the subpoena, insofar as his production remains incomplete and insofar as Dunne waited to retain an IT consultant to search his email for responsive documents. Doc. #304 at 21-26. The fact that the Trustee has found what he considers to be additional responsive emails that Dunne did not produce, as well as that that the Trustee has learned about text messages falling within the scope of the subpoena, suggests that Dunne had not fully complied with the terms of the subpoena

when the Trustee filed his motion, and may still not have fully complied. *See* Doc. #225 at 20-21.

All the same, I am unconvinced that Dunne's attempts at compliance are unreasonable given the circumstances. Although the July 2016 subpoena requested 131 categories of documents, *see* Doc. #274-1 at 47-56, the Trustee moved for further contempt just over a month after the District Court affirmed the Bankruptcy Court's contempt ruling. *See* Doc. #70; *In re Dunne*, 2018 WL 4654698 (D. Conn. 2018). The Trustee has since essentially received the relief he initially requested: the work of a forensics discovery consultant to review Dunne's available emails from the seandunne366@gmail.com account and other documents for responsiveness and privilege. *See* Doc. #70 at 31. Dunne has agreed that this work should take place at his expense, *see* Doc. #274 at 41; Doc. #329 at 11, and the continued use of and payment for an IT consultant in production will ensure that Dunne's prior noncompliance does not financially prejudice the Trustee. While Dunne and the Trustee dispute the search terms that Dunne has used to canvass for responsive documents, *see* Doc. #304 at 24-25; Doc. #329 at 10, based on Dunne's counsel's willingness to confer with the Trustee about search terms, it is far from clear to me that any disagreement in this regard constitutes willful noncompliance with the July 2016 subpoena that would amount to contempt. *See* Doc. #274-1 at 101. As such, while it is not impermissible to apply discovery sanctions to a party that has only belatedly complied with its obligations, *see Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 631 (2d Cir. 2018), because Dunne has made reasonable efforts at compliance at his own expense in the wake of the affirmance of the previous contempt rulings, I am unpersuaded that further punitive sanctions are required here. Dunne shall continue to employ the IT consultant and cooperate in good faith with requested searches of his seandunne366@gmail.com account.

*Attorney's fees and costs*

The Trustee has requested an award of fees and costs associated with his motion for contempt. *See* Doc. #225 at 8. Rule 37(e)(1) allows relief necessary to cure prejudice to another party from the loss of electronically stored information. Insofar as the Trustee was economically prejudiced by the need to litigate this motion in response to Dunne's negligent destruction of electronic records and his dilatory compliance with email-related discovery demands, the Trustee may recover from Dunne for the Trustee's attorney's fees and costs not to exceed $10,000 total that are attributable to his renewed motion for further contempt (Doc. #70) and subsequent related filings before Judge Spector and me stemming from this motion. *See Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *17 (S.D.N.Y. 2018); *Best Payphones, Inc. v. City of New York*, 2016 WL 792396, at *7 (E.D.N.Y. 2016). The Trustee shall furnish an itemized statement and verification of these fees and costs to counsel for Dunne within 21 days, and Dunne shall pay these costs within 30 days. If the parties disagree about any of these costs, then Dunne shall nonetheless pay those costs about which he does not disagree, and the parties should contact Judge Spector concerning their remaining differences.

## CONCLUSION

For the foregoing reasons, the Trustee's motion for contempt (Doc. #70) is DENIED. The Court finds that Dunne's loss of electronic records was negligent, and so imposes curative measures pursuant to Fed. R. Civ. P. 37(e)(1) as described in this order. Dunne shall also furnish the documents over which he asserts the attorney-client privilege to Judge Spector for *in camera* review as described in this order. The Trustee shall furnish an itemized statement of costs and fees to counsel for Dunne on or before **May 7, 2019**, and Dunne shall pay within thirty days

thereafter. Dunne shall continue to use an IT consultant to produce remaining responsive documents, and shall bear the costs of doing so.

It is so ordered.

Dated at New Haven this 16th day of April 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge