UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICHARD M. COAN,
    *Plaintiff-Trustee*,

v.

SEAN DUNNE *et al.*,
    *Defendants*.

No. 3:15-cv-00050 (JAM)
Adv. Proc. No. 15-5019 (JAM) (consol.)

**ORDER DENYING WITHOUT PREJUDICE TRUSTEE'S MOTION *IN LIMINE* TO PRECLUDE HANDWRITTEN DOCUMENTS**

This is an action by Bankruptcy Trustee Richard M. Coan principally alleging fraudulent transfers of money and property by Sean Dunne to his wife Gayle Killilea and others. *See Coan v.* Dunne, 2019 WL 302674, at *1-*2 (D. Conn. 2019) (generally describing the history of this case). The Trustee has now moved *in limine* (Doc. #365) to preclude the introduction into evidence of certain handwritten documents purportedly created by Sean Dunne and Gayle Killilea. For the reasons stated herein, I will deny the Trustee's motion without prejudice.

**BACKGROUND**

Although the Trustee refers to a "March 2005 Letter," "July 2005 Letter," and "February 2008 Letter," *see* Doc. #366 at 3-5, his motion *in limine* does not designate the specific exhibits to which he objects by number, and so I rely on defendants' representations in their opposition to the motion in order to identify and address the exhibits to which the Trustee objects. *See* Doc. #394 at 2-3.

*Exhibits 5502 and 5540*

Exhibits 5502 and 5540 are copies of the same document, titled "Property Transfer Agreement between Sean & Gayle Dunne – 23rd March 2005." *Id.* at 1. In the agreement, Sean Dunne promises to Gayle Killilea 70 percent of the profits from his sale of six properties: (1)

1

Woodtown Rathfarnam, Co[unty] Dublin; (2) IGB Clonskeagh, Co. Dublin; (3) Lagoon Beach Hotel, Cape Town, S[outh] A[frica]; (4) Charlesland, Co[unty] Wicklow ([r]esidential portion only); (5) Malahide, Co[unty] Dublin; and (6) Rivertree (1 & 3 Shrewsbury Rd., Dublin 4). Dunne promised the profits from the sale of these properties "for the benefit of [Killilea] and [their] son Bobby Luke and any future children born to [them]." *Ibid.* The document further declares Sean Dunne's transfer to Gayle Killilea of his interest in loan repayments from Lagoon Beach and profits from Charlesland. *Id.* at 2. Through this document, Dunne sought to "assure the financial independence of my wife & children for the future and to secure their independence from my own property investments." *Id.* at 1. The document purports to bear the signatures of Dunne and Gayle Killilea, a date of March 23, 2005, and a declaration that Dunne and Killilea were in Hua Hin, Thailand, when the document was created. *Id.* at 3.

### *Exhibit 5505*

Exhibit 5505 is dated February 15, 2008, and bears the title "Ref: Property Transfer Agreement Between Sean Dunne and Gayle Dunne (Killilea) 23rd March 2005." *Id.* at 1. Per the document, Sean Dunne purports to irrevocably transfer his full interest in the Lagoon Beach Hotel in Cape Town, South Africa, to Gayle Dunne because the sale of the hotel was not possible. *Ibid.* The document also claims that Dunne transfers "any and all tax issues arising on the future sale of this property" as well as "all loans made by me to Mountbrook Homes Ltd, and all of its associated companies and subsidiaries." *Ibid.* Dunne renounces "all claims over or against the assets" on behalf of his estate and "all claims over any present or future income derived from the ongoing trade or sale of the" hotel. *Id.* at 2. The agreement, claiming to be executed by Dunne and Killilea, and bearing an illegible witness signature, is a "full and final settlement" of Dunne's obligation "in relation to Lagoon Beach Hotel and to Mountbrook Homes

2

LTD Loans dated 23rd March 2005." *Ibid.*

### *Exhibit 5507*

Exhibit 5507 purports to be the "Wishes & Will of S. Dunne." *Id.* at 1. It contains a handwritten distribution of Sean Dunne's assets, delineation of management of his companies, and guardianship arrangements for his children. *Id.* at 1-4. The document bears the signatures of Sean Dunne, John Dunne, and Killilea, and is dated July 27, 2007. *Id.* at 4.

### *Exhibit 5544*

Exhibit 5544 purports to be a declaration by Sean Dunne confirming that he holds the contract to purchase Walford in trust for Killilea. *Id.* at 1. The document claims that Dunne holds the entire interest in the contract on the basis of the March 23, 2005, property settlement agreement, and that he and his estate renounce any claims to the property—confirming that he will transfer Walford to Killilea "or her nominee when called upon to do so." *Ibid.* The document bears signatures in the names of Sean Dunne, Killilea, and John Dunne, and a date of July 23, 2005. *Ibid.*

### *Exhibit 6379*

Exhibit 6379 purports to be a "Mortgage Repayment (€5M) Agreement" dated July 22, 2008. *Id.* at 1. It sets out to "immediately repay at the first opportunity the sum of €5 million which DCD Builders Md. was lent/borrowed on our family home in July 2007." *Ibid.* The document discusses other obligations, including Dunne's commitment to "undertake to pay the sum of €50k/month against the capital & interest payments so as to keep the balance on the mortgage well below its limit." *Id.* at 2. Per the document, Dunne states that he "recognize[s] that this €5 million is the obligation of my company DCD Builders and me to repay at the first available opportunity and ranks ahead of all other charges hereby created after this date by me

3

and DCD Bldrs Ltd. until such time as the €5M is fully repaid." *Id.* at 2-3. The agreement is stated to be "enforceable against monies earned within or outside of Ireland," and "relates to all related/connected/group companies of DCD Bldrs Ltd/Group Structure." *Id.* at 3. It bears the signatures of Sean Dunne and Gayle Killilea, and it is dated July 22, 2008, in Dublin. *Ibid.*

## DISCUSSION

The Trustee first moves to preclude these documents on the basis that they cannot be adequately authenticated pursuant to Federal Rule of Evidence 901. Doc. #366 at 6-9. A party who seeks to introduce evidence at trial must, of course, bear the burden to show that the evidence is what its proponent claims it to be. Rule 901(a) of the Federal Rules of Evidence provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

As the Second Circuit has observed, Rule 901 "does not definitively establish the nature or quantum of proof that is required preliminarily to authenticate an item of evidence." *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014). Still, "the bar for authentication of evidence is not particularly high," and "the proponent need not rule out all possibilities inconsistent with authenticity," but need only adduce "sufficient proof . . . so that a reasonable juror could find in favor of authenticity or identification." *Ibid.* And of course, once an item of evidence is "authenticated" as required under Rule 901, this "merely renders evidence admissible, leaving the issue of its ultimate reliability to the jury," for which "the opposing party remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning," with all such challenges going to the weight of the evidence

4

rather than its initial admissibility. *Ibid.*

In general, "[t]he testimony of a witness with knowledge that a matter is what it is claimed to be is sufficient" to satisfy the 901(a) standard. *United States v. Carneglia*, 256 F.R.D. 384, 391 (E.D.N.Y. 2009). Here, the documents at issue all are purportedly written, signed, and/or witnessed by Sean Dunne, Gayle Killilea, and John Dunne. They are expected to testify at trial, and so can be examined about the authenticity of the handwritten documents at which time I will decide if an adequate authentication foundation has been established.

The Trustee next objects to the documents on the ground that they fail to fulfill the best evidence rule, and that defendants may not introduce any duplicates. *See* Doc. #366 at 9-12. It is true that Rule 1002 of the Federal Rules of Evidence provides that "[a]n original writing, recording, or photograph is required to prove its content unless these rules or a federal statute provides otherwise," and that Rule 1003 limits the admissibility of duplicate documents where there are genuine challenges to an original's authenticity. But while the Trustee makes a blanket assertion that defendants have failed to produce original documents and that defendants have failed to provide an adequate explanation as to why any originals cannot be produced, *see* Doc. #366 at 11-12, defendants contend that they will be able to produce originals of some of these documents and that the circumstances excusing the requirement of original documents under Rule 1004 are present. *See* Doc. #394 at 5-6. The Trustee did not request prior to trial to conduct a physical examination or testing of the purported originals. To the extent that defendants fail to produce at trial a purported original of the handwritten documents, I will evaluate their testimony about why the original has not been produced as preferred under the best evidence rule.

Lastly, the Trustee argues that the handwritten documents are inadmissible hearsay. Doc. #366 at 12-16. Of course, out-of-court statements admitted for their truth are generally

5

inadmissible as hearsay. Fed. R. Evid. 801(c); 802. For the most part, however, the documents contain statements of present intentions which are within an exception to the hearsay rule. *See* Fed. R. Evid. 803(3) (hearsay exception for "statement of the declarant's then-existing state of mind (such as motive, intent, or plan) . . . but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will"); *In re Fill*, 68 B.R. 923, 928-29 (Bankr. S.D.N.Y. 1987) (debtor's prior statement of intention to repay loans admissible under Fed. R. Evid. 803(3) in case against debtor by bankruptcy trustee alleging fraudulent transfer of assets; "[t]he statements are to be offered to prove that transfers made some six or so years later were consistent with this earlier expressed intention and were not intended to hinder, delay or defraud creditors"). To the extent that the Trustee may identify any statement within these documents that is not a statement of *present* intention but is a statement is *past* factual occurrence, then the Trustee may request the Court to issue a limiting instruction for the jury to disregard any such statements of past occurrence. In view of the applicability of Rule 803(3), I need not consider at this time whether the documents are otherwise admissible as verbal acts. *See, e.g.*, *United States v. DiMaria*, 727 F.2d 265, 270 n.4 (2d Cir. 1984).

## CONCLUSION

For the reasons stated above, the Trustee's motion to preclude the introduction of handwritten documents (Doc. #365) is DENIED without prejudice to particularized renewal at

trial.

It is so ordered.

Dated at New Haven this 9th day of May 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge