UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICHARD M. COAN, TRUSTEE OF THE
BANKRUPTCY ESTATE OF SEAN
DUNNE
      Plaintiff,

                                        Civ. No. 3:15-cv-000050 (JAM)

      v.

SEAN DUNNE, et al
      Defendants

**RULING ON PLANTIFF RICHARD M. COAN'S RENEWED MOTION FOR POST-VERDICT, PREJUDGMENT REMEDIES PURSUANT TO FED. R. CIV. P. 64 AND CONNECTICUT LAW**

Pursuant to Fed. R. Civ. P. 64 and Connecticut General Statute §52-278a *et seq.*, Plaintiff Richard M. Coan, Trustee of the Bankruptcy Estate of Sean Dunne moves the Court for entry of post-verdict prejudgment remedies against defendant Gayle Killilea Dunne, wife of the bankruptcy debtor Sean Dunne (the "Debtor"). (ECF No. 621).

On June 4, 2019, a jury found by the preponderance of the evidence that Killilea was the recipient of multiple fraudulent transfers from her husband the Debtor in the amount of €17,765,706 and $278,297.18. The jury verdict does not take into account the Trustee's pending equitable claims, nor does it take into account prejudgment interest and costs incurred by the Trustee which he contends are recoverable as the prevailing party.

The Trustee brings this post-verdict motion to secure satisfaction of judgment. Specifically, the Trustee seeks an Order: (1) directing Killilea to provide an updated asset disclosure, pursuant to Conn. Gen. Stat. §52-278n; (2) attaching Killilea's membership interest in Defendants WAHL, LLC and Mountbrook USA, LLC; (3) attaching and/or garnishing rents at 22 Stillman Lane, Greenwich, CT (the "Stillman Lane property"); (3) attaching her assets located

in Connecticut, being paid to Defendant WAHL, LLC; (4) attaching Killilea's interest in other non-U.S. assets in which she holds an interest; (5) enjoining Killilea from using, reducing diminishing, transferring, disposing of, and/or in any respect dissipating monies available to satisfy the verdict amount and further to hold, preserve, and maintain inviolate, for the Trustee's benefit, the verdict amount; and (6) granting such other and further relief as the Court may deem sufficient to satisfy the judgment.

For the reasons that follow, the Trustee's Renewed Motion for Post-Verdict Prejudgment Remedies (**ECF No. 621**) is **GRANTED.**

## I.   BACKGROUND

The Debtor Sean Dunne filed his petition for bankruptcy under Chapter 7 of the United States Code on March 29, 2013 (the "Petition Date") in the United States Bankruptcy Court for the District of Connecticut. (ECF No. 621 at 5 ¶1). Plaintiff Richard M. Coan was appointed the Chapter 7 Trustee on the Petition Date. *Id.* ¶2.

On March 27, 2015, the Trustee filed an adversary proceeding in the Bankruptcy Court seeking money damages, equitable relief, declaratory relief, costs, interest and fees. Through the action, the Trustee sought the avoidance and recovery of allegedly fraudulent transfers pursuant to the U.S. Bankruptcy Code and other applicable law and asserted claims for unjust enrichment, constructive trust and other relief. *Id.* ¶3. On April 12, 2016, by Order of the Bankruptcy Court, the Trustee filed this First Amended Complaint. (ECF No. 189).

This case was tried to a jury before District Judge Jeffrey Alker Meyer from May 6 through May 24, 2019. On June 4, 2019, the jury returned a unanimous verdict against Defendant Gayle Killilea on seven counts. (ECF No. 509).

On Count One, the jury found by a preponderance of the evidence that on March 29, 2013, Sean Dunne engaged in an intentionally fraudulent transfer of the Walford property in

violation of the U.S. Bankruptcy Code. They found Defendant Killilea liable for damages in the amount of €14,000,000. *Id.* at 1.

On Count Three, the jury found by a preponderance of the evidence that on or about February 27, 2012, Sean Dunne engaged in an intentionally fraudulent transfer of real property located at 81 North Wall Quay Dublin in violation of the U.S. Bankruptcy Code. They found Defendant Killilea liable for damages in the amount of €100,000. *Id.* at 2.

On Count Four, the jury found by a preponderance of the evidence that on or about February 27, 2012, Sean Dunne engaged in a constructively fraudulent transfer of real property located at 81 North Wall Quay Dublin in violation of the U.S. Bankruptcy Code. They found Defendant Killilea liable for damages in the amount of €200,000.

On Count Ten, the jury found by a preponderance of the evidence that on various dates in 2011 and 2012, Sean Dunne engaged in constructively fraudulent transfers to Gayle Killilea of Lucy Partnership payments in violation of the U.S. Bankruptcy Code. They found Defendant Killilea liable for damages in the amount of €112,500 (August 11, 2011); €95,500 (October 28, 2011); and €50,000 (April 23, 2012). *Id.* at 4-5.

On Count Eleven, the jury found by a preponderance of the evidence that on various dates in 2010 and 2011, Sean Dunne engaged in an intentionally fraudulent transfer to Gayle Killilea of Lucy Partnership payments in violation of Irish law. They found Defendant Killilea liable for damages in the amount of €123,956 (October 26, 2010) and €68,750 (March 11, 2011). *Id.* at 5-6.

On Count Twenty-One, the jury found by a preponderance of the evidence that on or about October 28, 2008, Sean Dunne engaged in an intentionally fraudulent transfer of money from his joint Credit Suisse account with Gayle Killilea to Gayle Killilea's individual account in

violation of Irish law. They found Defendant Killilea liable for damages in the amount of €3,015,000. *Id.* at 8.

Finally, on Count Twenty-Seven, the jury found by clear and convincing evidence that on or about various dates in July 2010 to November 2010, Sean Dunne engaged in an intentionally fraudulent transfer of money to Gayle Killilea in violation of Connecticut law. They found Defendant Killilea liable for damages in the amount of $278,297.18

| Verdict | Applicable Law | Damages Award |
|---|---|---|
| Count One: Gayle Killilea | Intentional Fraud-transfer of the Walford property, U.S. Bankruptcy Code | € 14,000,000 |
| Count Three: Gayle Killilea | Intentional Fraud-transfer of real property 81 North Wall Quay, Dublin, U.S. Bankruptcy Code | €    100,000 |
| Count Four: Gayle Killilea | Constructive Fraud-81 North Wall Quay, Dublin, U.S. Bankruptcy Code | €    200,000 |
| Count Ten: Gayle Killilea | Constructive Fraud-Lucy Partnership Payments, U. S. Bankruptcy Code | €    112,500 <br> €      95,500 <br> €      50,000 |
| Count Eleven: Gayle Killilea | Intentional Fraud-Lucy Partnership Payments, Irish Law | €    123,956 <br> €      68,750 |
| Count Twenty-One: Gayle Killilea | Intentional Fraud, Money Transfer, Irish Law | €  3,015,000 |
| Count Twenty-Seven: Gayle Killilea | Intentional Fraud-Money Transfer, Connecticut Law | $    278,297.18 |
| **TOTAL DAMAGES AWARDED IN EUROs** | | €17,765,706 [1] |
| **TOTAL DAMAGES AWARDED in U.S. DOLLARS** | | $    278,297.18 |

---

[1] The Trustee asserts that the "jury awarded in excess of €17,838,000, plus $278,000 in damages pursuant to 11 U.S.C. §§548, 544, 550 and Irish law." (ECF No. 621 at 6).

The Trustee estimates that the damages awarded in U.S. dollars total $22 million, without accounting for prejudgment interest, costs or the Trustee's equitable claims that are pending before Judge Meyer. [2] (ECF No. 621 at 4).

The net proceeds of the 2016 sale of the Walford property, €14,000,00 or $12,534,842.71, are being held in the Trustee's escrow account. *Id.* at 4 and 7 ¶12. The Trustee asserts that he is "at least $9.5 million dollars short of security against the $22 million verdict, without accounting for prejudgment interest, costs or the Trustee's pending equitable claims. *Id.* at 4.

II.   **POST-VERDICT PREJUDGMENT REMEDY STANDARD**

Plaintiff seeks a post-verdict prejudgment remedy in the amount of the verdict, along with prejudgment interest, pursuant to Rule 64 of the Federal Rules of Civil Procedure and Connecticut General Statutes § 52–278a. Rule 64 permits a plaintiff in federal court to utilize available state prejudgment remedies to secure a judgment that might ultimately be rendered in an action and provides, in pertinent part:

> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment….

Fed. R. Civ. P. 64. "Connecticut law in turn allows for entry of a prejudgment remedy if a party shows probable cause that a judgment will enter in the amount sought for a remedy." *Roberts v.*

---

[2] "The Trustee assumes that the Court will enter a judgment in U.S. dollars since 'American courts rarely enter judgments in a foreign currency.'" (ECF No. 621 at 6 n.3 ) (citing *Yukos Capital S.A.R.L. v Saraneftegaz*, 592 F. Appx. 8, 12 (2d Cir. 2014) and *Competex, S.A. v. Labow*, 783 F.2d 333, 337 (2d Cir. 1986(; and Restatement (Third) of Foreign relations Law §823 (1987) ("The traditional United States rule has been that courts in the United States are required to render money judgments payable in United States dollars only, regardless of the currency of obligation or loss.").  "The Trustee further assumes that the Court will apply the exchange rate applicable at the time the Trustee's causes of action accrued, i.e. the Petition Date." *Id. (*citing *Yukos Capital,* 783 F.3d at 12). The Petition date is March 29, 2013. *Id. at 5 ¶1.*

*Triplanet Partners LLC*, No. 3:12CV1222 JAM, 2014 WL 1831022, at *2 (D. Conn. May 8, 2014) (citing Conn. Gen. Stat. § 52–278d(a)).

|Connecticut courts have recognized that 'a prejudgment remedy is available to a party who has prevailed at the trial level and whose case is on appeal.'" *Weber v. FujiFilm Med. Sys. U.S.A., Inc.,* No. 3:10CV401 JBA, 2013 WL 6592592, at *6 (D. Conn. Dec. 16, 2013) (quoting *Gagne v. Vaccaro,* 80 Conn. App. 436, 454 (2003); *see also id.* at 453 n. 15 (collecting cases)).

> The purpose of the [prejudgment remedy] statute is to allow a plaintiff who can show probable cause that he will eventually succeed on the merits to encumber property of the defendant to protect himself from obtaining a judgment which cannot be satisfied. At the same time the statute seeks to protect the defendant from unreasonable encumbrances. It is as necessary to protect a plaintiff who has won at the trial level, when the final disposition of the case awaits appellate proceedings, as it is to protect that same plaintiff before trial. There is no reason to assume that the legislature intended, by using the phrase 'final judgment,' to deprive a plaintiff, who awaits final disposition of the case, of the protection afforded by this statute.

*Id.* at *6 (quoting *Gagne*, 80 Conn. App. at 453 (internal citations and quotation marks omitted)).

### *"Probable Cause" is Established*

It is undisputed that probable cause for the entry of a Post-Verdict Prejudgment Remedy in the amount found by the jury is established.[3] On June 4, 2019, the jury entered a verdict by a "preponderance of the evidence" standard on Counts One, Three, Four, Ten, Eleven and Twenty-One, and as to Count Twenty-Seven on a finding of "clear and convincing evidence." Thus, the requirement of showing probable cause for a prejudgment remedy in the amount of the verdict has been satisfied. No evidentiary hearing on this motion is necessary. Similarly, the jury

---

[3] "Killilea concedes that the verdict can establish probable cause and thus [the] Court may view that the Trustee is entitled to obtain security on Connecticut assets to secure the verdict of €17,765,706 in Euros and $278,297.18 in dollars." (ECF No. 628 at 15).

determined the damages in this case, so the Court need not make a determination on how much of Defendant Killilea's property may be properly attached.

"The purpose of the prejudgment remedy statute is 'to secure the defendants' assets, forestalling the dissipation thereof, while awaiting a final judgment.'" *Gagne*, 80 Conn. App. at 452 (quoting *Cahaly v. Benistar Property Exchange Trust Co.,* 73 Conn. App. 267, 277, 812 A.2d 1, *cert. granted on other grounds*, 262 Conn. 925, 814 A.2d 378 (2002)).

> Generally, a hearing is required before a prejudgment remedy may issue. *See* Conn. Gen. Stat. § 52–278d. However, ***because there has already been a trial and jury verdict on Plaintiff's claims, such a hearing is unnecessary in this case***. *Cf. Bank of Boston Connecticut v. Schlesinger,* 220 Conn. 152, 156 (1991) (noting that the hearing required by the prejudgment remedy "is not contemplated to be a full scale trial on the merits of plaintiff's claims."); *New England Health Care Employees Welfare Fund v. iCare Management, LLC,* 792 F. Supp. 2d 269, 283 (D. Conn. 2011).

*Weber,* 2013 WL 6592592, at *5 (emphasis added).

The Trustee's Motion for Post-Verdict Prejudgment Remedy is **GRANTED** against Defendant Killilea in the amount of €17,765,706 and $278,297.18, to secure the jury verdict.

The Trustee's Motion for an Updated Asset Disclosure is **GRANTED**. Under Connecticut law, a disclosure of assets is ordered if a prejudgment remedy is ordered. *See* Conn. Gen. Stat. § 52–278n. The Court ordered Defendant Killilea to disclose assets on September 16, 2019. (ECF No. 551). An updated disclosure of assets is appropriate in light of the passage of time and the Post-Verdict Prejudgment Remedy entered in this case. Defendant Killilea will, within fourteen (14) days of issuance of this ruling, update for the Trustee the existence, location and extent of any property, as defined by Conn. Gen. Stat. § 52–278a(e), sufficient to satisfy a total judgment in the amount of €17,765,706 and $278,297.18.

The net proceeds of the 2016 sale of the Walford property are being held in the Trustee's escrow account in the amount of €14,000,000, or $12,534,842.71. (ECF No. 621 at 4 and 7 ¶12).

The Trustee asserts that he is "at least $9.5 million dollars short of security against the $22 million verdict, without accounting for prejudgment interest, costs or the Trustee's pending equitable claims…." *Id.* at 4.

The Trustee's request to attach and/or garnish assets sufficient to satisfy the prejudgment remedy is **GRANTED**. " 'Prejudgment remedy' means any remedy or combination of remedies that enables a person by way of attachment, *foreign attachment*, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment but shall not include a temporary restraining order." *Wachovia Bank, N.A. v. Cummings*, No. 309CV957SRU, 2010 WL 466160, at *5 (D. Conn. Feb. 8, 2010) (quoting Conn. Gen. Stat. § 52–278a (d)(emphasis added)). A prejudgment attachment of the Defendant Killilea's property shall enter, sufficient to secure a judgment of €17,765,706 and $278,297.18.

The Trustee may issue a writ of attachment to secure any assets in aid of the prejudgment remedy, including but not limited to Defendant Killilea's membership interest in WAHL, LLC, which holds a fee simple interest the property located at 22 Stillman Lane, Greenwich, CT; Killilea's membership interest in Mountbrook USA, LLC.; attaching and/or garnishing any rents of 22 Stillman Lane, Greenwich, CT paid to WAHL, LLC; and attaching Defendant Killilea's interest in other non-US assets in which she holds an interest.

Connecticut law provides for the "foreign attachment" or garnishment against third parties

> When the effects of the defendant in any proposed or pending civil action in which a judgment or decree for the payment of money may be rendered are concealed in the hands of his agent or trustee so that they cannot be found or attached, or when a debt other than earnings, as defined in subdivision (5) of section 52-350a, is due from any person to such defendant….

Conn. Gen. Stat. § 52-329; see *England v. England*, 184 Conn. 85, 88 (1981) (Conn. Gen. Stat. §52-329 "provides that the process of foreign attachment is available "in any civil action in which a judgment or decree for the payment of money may be rendered."); *Bristol Savings Bank v. Silver*, Civ. No. 3:95CV288 (JBA), 208 B.R. 100, 103 (D. Conn. 1996) ("Connecticut law provides for a garnishment procedure known as 'foreign attachment' in pending civil actions."); *W & D Acquisition, LLC v. First Union Nat. Bank*, 262 Conn. 704, 708 (2003) (foreign attachment or garnishment under Conn. Gen. Stat. §52-529 may be utilized to "require a bank to comply with garnishment process,").

It is uncontested that the Court has *in personam* jurisdiction over Defendant Killilea. This Court finds that it has authority to issue ancillary orders based on the Court's *in personam* jurisdiction under a probable cause standard. *See Garnet Analytics, Inc. v. Diversified Sols., Inc.*, No. 3:12CV716 (WWE), 2013 WL 12286173, at *3 (D. Conn. July 16, 2013) ("A federal district court can effectuate a PJR issued under Connecticut law by ordering parties over whom the court has *in personam* jurisdiction to take or refrain from taking certain actions.") (quoting *Hamma v. Gradco Sys.*, Civ. Nos. B:89-437 (JAC), 8:88-115 (JAC), 1992 WL 336740, *3 (D. Conn. Nov. 4, 1992) (citation omitted); *The Final Cut, LLC v. Sharkey*, No. X05CV085007365S, 2010 WL 4887193, at *16 (Conn. Super. Ct. Nov. 8, 2010) ("The court finds that the injunction is an essential adjunct to the prejudgment relief here, since the plaintiff has been frustrated in its earlier efforts at securing sufficient assets of the defendants to satisfy the PJR."); *Katcher v. 3V Capital Partners LP*, No. X05CV085008383S, 2011 WL 1105724, at *20 (Conn. Super. Ct. Feb. 1, 2011)("The court finds that a temporary injunction is an essential adjunct to the prejudgment relief being granted here."). "To find otherwise would undermine the important policy of preventing a party from frustrating justice by removing assets from the court's territorial

jurisdiction, and, importantly, would render a prejudgment remedy unavailable in cases with out of state defendants whose assets are located out of state." *Id.* at *3 (internal quotation marks omitted).

Accordingly, Defendant Killilea is hereby ordered to bring assets to Connecticut and turn them over to the Court for attachment within fourteen (14) days, in accordance with the Post-Verdict Prejudgment Remedy granted. Alternatively, Defendant Killilea may elect to post a cash bond equal to the amount of the prejudgment remedy, or the amount by which the assets brought to Connecticut and made available for attachment falls short of the amount of the prejudgment remedy.

The parties strongly dispute whether the Trustee currently has security over assets to satisfy the Post-Verdict Prejudgment Remedy. Although Defendant Killilea argues that the Trustee has no legal basis to attach non-U.S. assets, she cites to no caselaw to support her argument. Rather, she contends that the Trustee "ignores that given that the verdict is mostly secured already, any such attachment order would need to be limited to the balance of €1,008,715 of the verdict not secured by U.S. assets." (ECF No. 628 at 22). She further expresses a willingness to reach an agreement to offer assets sufficient to secure the Post-Verdict Prejudgment Remedy. She states, "in exchange for the release of the current Mareva and existing OA [Official Assignee for the Irish Bankruptcy Court] lien against LBH ["Lagoon Beach Hotel and Spa"], Killilea would certainly consider posting additional security in the U.S. to fully cover the verdict." *Id.*

Either party may seek to modify this prejudgment remedy at a later date by filing a Motion for a Supplemental Order in Aid of Post-Verdict Prejudgment Remedy or a Motion to

Modify the Post-Verdict Prejudgment Remedy after a determination on prejudgment interest, post-judgment interest, costs and other equitable claims.

## III.   CONCLUSION

For the reasons stated, Plaintiff's Renewed Motion for Post-Verdict, Prejudgment Remedies Pursuant to Fed. R. Civ. P. 64 and Connecticut Law (ECF No. 621 ) is **GRANTED** against Defendant Killilea in the amount of the jury verdict entered June 4, 2019, totaling €17,765,706 [4] and $278,297.18.

It is ORDERED that, the Motion for an Updated Asset Disclosure is **GRANTED**. Defendant Killilea will comply with this ruling and order within fourteen (14) days.

It is further ORDERED that, Defendant Killilea is enjoined from using, reducing, diminishing, transferring, disposing of, and/or dissipating assets or property while Defendant Killilea complies with the Court's order to satisfy the Post-Verdict Prejudgment Remedy.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion,[5] the standard of review of which is specified in 28 U.S.C. §636; Fed. R. Civ. P. 6(a) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

---

[4] The Trustee asserts that the "jury awarded in excess of €17,838,000, plus $278,000 in damages pursuant to 11 U.S.C. §§548, 544, 550 and Irish law." (ECF No. 621 at 6).

[5] It has long been the rule in this district that a PJR application is a non-dispositive motion, and upon referral to a Magistrate Judge, does not require a recommended ruling. *Aetna Life Ins. Co. v. Tooth Savers Dental Serv.*, No. 96 CV 102453(GLG), 1997 WL 102453, at *1 (D. Conn. Feb. 5, 1997). *See also Doe v. Bruno*, No. 3:17 CV 217 (JAM), 2017 WL 1424298, at *4, n.3 (citing cases).

*See* 28 U.S.C. § 636(b)(**written objection to ruling must be filed within fourteen calendar days after service of same**); Fed. R. Civ. P. 6(a) & 72; Rule 72.2 of the Local Rule for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).

SO ORDERED, this 28th day of January 2021, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge