UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICHARD M. COAN,
    *Plaintiff-Trustee*,

v.

SEAN DUNNE *et al.*,
    *Defendants*.

No. 3:15-cv-00050 (JAM)

## ORDER DENYING POST-TRIAL MOTION OF DEFENDANT KILLILEA FOR DIRECTED VERDICT OR NEW TRIAL

This is a case about international bankruptcy fraud. A jury returned a trial verdict against the defendant Gayle Killilea concluding that she took part in multiple fraudulent transfers of the assets of her former husband, Sean Dunne, who had declared bankruptcy.

Killilea has filed a post-trial motion for a directed verdict or new trial pursuant to Fed. R. Civ. P. 50 and 59. She repeats many of the same arguments that I have previously rejected when they were raised by Dunne. *See Coan v. Dunne*, 2021 WL 3012678, at *9–23 (D. Conn. 2021) ("Omnibus Ruling"). I will deny Killilea's motion.

### BACKGROUND

This case was initiated by the bankruptcy Trustee seeking to recover assets that the debtor Sean Dunne allegedly transferred to Gayle Killilea and others in order to avoid the claims of creditors. After a nineteen-day trial in May 2019 including five days of deliberations, the jury returned a split verdict, including findings that Dunne had engaged in fraudulent transfers under nine of the counts submitted to it and that Killilea bore liability for some of those transfers. *Ibid*.

Relevant here are the jury's findings with respect to seven of those counts:

1

- In Count 1, the jury found that Dunne engaged in an intentionally fraudulent transfer of an Irish property known as Walford in violation of the U.S. Bankruptcy Code, and that Killilea was liable for the transfer in the amount of €14,000,000 in damages.[1]

- In Count 2, the jury found that Dunne engaged in a constructively fraudulent transfer of Walford in violation of the U.S. Bankruptcy Code, but that no defendants were liable for the transfer.[2]

- In Count 3, the jury found that Dunne engaged in an intentionally fraudulent transfer of an Irish property located at 81 North Wall Quay in violation of the U.S. Bankruptcy Code, and that Killilea was liable for the transfer in the amount of €100,000 in damages.[3]

- In Count 4, the jury found that Dunne engaged in a constructively fraudulent transfer of the North Wall Quay property in violation of the U.S. Bankruptcy Code, and that Killilea was liable for the transfer in the amount of €200,000 in damages.[4]

- In Count 10, the jury found that Dunne engaged in three constructively fraudulent transfers between August 2011 and April 2012 of a stream of payments known as the Lucy Partnership payments in violation of the U.S. Bankruptcy Code, and that Killilea was liable for the transfers in the amount of €258,000 in damages.[5]

- In Count 11, the jury found that Dunne engaged in two intentionally fraudulent transfers of other Lucy Partnership payments between October 2010 and March 2011 in violation of Irish law, and that Killilea was liable for the transfers in the amount of €192,706 in damages.[6]

- In Count 21, the jury found that Dunne engaged in an intentionally fraudulent transfer of €3,015,000 from his joint Credit Suisse account with Killilea to her individual account in violation of Irish law, and that Killilea was liable for the transfers in the amount of €3,015,000 in damages.[7]

Following the jury verdict and after unsuccessful efforts to settle the matter, the parties asked me to adjudicate a variety of post-trial motions. In particular, Sean Dunne moved for post-verdict relief in the form of a new trial or, in the alternative, judgment as a matter of law.[8] I

---

[1] Doc. #509 at 1.
[2] *Id.* at 1–2.
[3] *Id.* at 2.
[4] *Id.* at 2–3.
[5] *Id.* at 4–5.
[6] *Id.* at 5–6.
[7] *Id.* at 8.
[8] Doc. #570.

denied Dunne's motion in my Omnibus Ruling. 2021 WL 3012678, at *9–23. Killilea has now filed her own motion for post-trial relief.[9]

## DISCUSSION

Killilea has moved for a new trial on Counts 1 and 2 (concerning the Walford transfer), Counts 3 and 4 (concerning the North Wall Quay transfer), Counts 10 and 11 (concerning various Lucy Partnership payments), and Count 21 (concerning the Credit Suisse transfers).

Rule 59(a) of the Federal Rules of Civil Procedure allows a court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).[10] The Court may only grant a motion for a new trial "if the jury has reached a seriously erroneous result or [its] verdict is a miscarriage of justice," or "if substantial errors were made in admitting or excluding evidence." *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 202 (2d Cir. 2014); *see also Lore v. City of Syracuse*, 670 F.3d 127, 155 (2d Cir. 2012) ("an erroneous evidentiary ruling warrants a new trial only when a substantial right of a party is affected, as when a jury's judgment would be swayed in a material fashion by the error").

In considering a motion for a new trial, the Court "may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner," but the Second Circuit has nonetheless emphasized "the high degree of deference [that

---

[9] Doc. #705.
[10] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

3

should be] accorded to the jury's evaluation of witness credibility, and that jury verdicts should be disturbed with great infrequency." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012); *see also DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) ("the court should only grant [a Rule 59] motion when the jury's verdict is egregious").

In the alternative, Killelea also renews her motions for judgment as a matter of law on Counts 3 and 4 and Counts 10 and 11.[11] The standard for a Rule 50 motion for judgment as a matter of law is even higher than the standard for a new trial. *See Jennings v. Town of Stratford*, 263 F. Supp. 3d 391, 405 (D. Conn. 2017). Under Rule 50, a motion for judgment as a matter of law will be granted only if "a reasonable jury [did] not have a legally sufficient evidentiary basis to find for the party" that prevailed at trial. Fed. R. Civ. P. 50(a)(1). A party seeking judgment as a matter of law bears a "heavy burden," and will succeed only if "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 52 (2d Cir. 2014).

I will consider the issues in turn.

### *Walford*

Killilea argues first that the Court should grant a new trial on Counts 1 and 2 because the Court improperly precluded her expert witness on Irish property and conveyancing law, Professor John Wylie, from referencing specific facts or evidence relevant to the Walford transaction in his testimony. In order to prove Counts 1 and 2, the Trustee needed to show, *inter alia*, that Dunne transferred the Walford property within two years of his 2013 bankruptcy filing,

---

[11] *See* Docs. #491, #617.

and in order to show that, the Trustee had to establish that Dunne owned Walford at the time of any purported transfer.[12] By Killilea's account, Wylie's testimony would have "made it clear that Sean Dunne's contract to purchase Walford . . . ultimately was transferred into a trust for Killilea by October 2006 and that thereafter Sean Dunne had no ownership interest in Walford."[13] She argues that it was manifestly erroneous for the Court to preclude aspects of Wylie's proposed testimony.[14]

I have already ruled on this issue, first when I granted in part and denied in part the Trustee's motion to preclude Wylie's testimony altogether, *see Coan v. Dunne*, 2019 WL 2169879 (D. Conn. 2019), and more recently when I denied Dunne's motion for a new trial on the Walford transfer as part of my Omnibus Ruling, *see* 2021 WL 3012678, at *15. As I explained in both rulings, expert testimony, though often helpful when introduced in a manner consistent with Federal Rule of Evidence 702, "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).

Because of the particular dangers posed by expert testimony about the law (as distinct from expert testimony on a fact issue), a court may permissibly prevent an expert on the law from testifying about what legal conclusions he believes that the jury should draw from the specific evidence in the case. *See, e.g.*, *Specht v. Jensen*, 853 F.2d 805, 807–10 (10th Cir. 1988); *see also Marx & Co., Inc. v. Diner's Club, Inc.*, 550 F.2d 505, 508–10 (2d Cir. 1977) (expert

---

[12] *See* Doc. #511 at 7–10.
[13] Doc. #706 at 4.
[14] *Id.* at 6–15.

attorney testimony permissible on "the ordinary practices of those engaged in the securities business" but not permissible when attorney "gave his opinion as to the legal standards which he believed to be derived from the contract and which should have governed [the defendant's] conduct" and when the attorney "repeatedly gave his conclusions as to the legal significance of various facts adduced at trial").

Despite her several pages of briefing on the issue, Killilea, like Dunne before her, fails to explain either how allowing Wylie to offer his legal opinion about the particular facts and evidence in this case would not have intruded into the Court and the jury's roles or why the Court's limitation on Wylie's testimony was a "substantial error." The Federal Rules of Evidence make clear that an opinion must be *helpful* to the trier of fact if it is to be admitted. *See SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 267–68 (D. Conn. 2017); Fed. R. Evid. 704 advisory committee notes.

Killilea asserts that Wylie should have been allowed to refer to specific documents "so that he could opine on whether those documents . . . met the standard under Irish law to create a trust for Walford for Killilea's benefit,"[15] but she fails to explain why the jury, with the benefit of both Wylie's testimony and the Court's instructions on background principles of Irish property law, was not fully capable of applying the law to the facts before them. Killilea was not prevented from eliciting from Wylie any of the critical legal-opinion predicates about Irish property law that she may have believed were necessary for her to argue for her version of how the jury should view the Irish legal instruments and practices at issue.[16] Therefore, Killilea's

---

[15] *Id.* at 14.
[16] For example, Killilea argues that "the jury was not adequately informed about Irish law that even though a clause in the Walford conveyance contract prevented the contract itself being *signed* in trust, Irish law did not prevent the beneficial equitable interest in Walford created by that contract being put in a trust." Doc. #706 at 19 (emphasis in

argument that the Court erred in limiting the scope of Wylie's testimony does not provide grounds for granting a new trial with respect to Walford.

Killilea argues next that she is entitled to a new trial on the Walford counts because the Trustee's closing arguments "misled the jury and misstated Irish law" as it applied to the Walford transaction.[17] Because Killilea failed to raise any objection to the Trustee's closing arguments at trial, I review her belated objection only for plain error. *See Chopra v. Gen. Elec. Co.*, 527 F. Supp. 2d 230, 249 (D. Conn. 2007).

Even when an objection has been properly preserved, a trial court enjoys broad discretion to determine whether the conduct of counsel is "so improper as to warrant a new trial." *Patterson v. Balsamico*, 440 F.3d 104, 119 (2d Cir. 2006). A court should order a new trial on the basis of attorney misconduct when, *inter alia*, "the conduct of counsel in argument causes prejudice to the opposing party and unfairly influences a jury's verdict." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 540 (2d Cir. 1992). "Not every improper or poorly supported remark made in summation irreparably taints the proceedings." *Patterson*, 440 F.3d at 119. "Rather, because attorneys are given wide latitude in formulating their arguments to the jury, rarely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal." *Ibid*.

Killilea takes issue with the Trustee's closing arguments as they related to the Walford purchase contract, the Matsack nominee agreement, and the Yesreb deed. First, with respect to the Walford purchase contract, Killilea objects to the Trustee's argument that "defendants' own expert testified that you couldn't put a document, a contract right into trust if the contract itself

---

original). But there was nothing to prevent Killilea from asking Wylie to explain this Irish law concept without having Wylie testify about the Walford contract itself and to further testify that this particular contract created a trust notwithstanding its own prohibitory language to the contrary.
[17] *Id.* at 15.

prohibited that."[18] But setting aside this Court's clear instructions to the jury that counsel's closing arguments did not constitute evidence,[19] and that the Court alone would instruct the jury on the law to be applied,[20] Killilea has not shown that this argument misrepresented Wylie's testimony. Although Wylie testified on direct examination that "the general law is you can put any sort of interest in any sort of property into a trust,"[21] on cross examination he conceded that "if a contract has a restriction on placing the interest in that contract in trust . . . that [would] prevent it from being placed in trust."[22] The jury was of course free to weigh for itself the evidence of whether the Walford purchase contract embodied any such restriction, but it does not appear to me that the jury was unfairly influenced by the Trustee's closing argument on the issue.

With respect to the Matsack nominee agreement, Killilea appears to take issue first with the Trustee's statement at closing argument that certain emails from Dunne "don't even come close" to establishing a trust in Walford and second with the Trustee's argument that, as a result, Killilea "ha[d] nothing to put in the Matsack Nominees agreements."[23] Killilea asserts that these comments misstate both Irish law and Wylie's testimony, but she does not explain how. Instead, she argues only that Wylie would have offered an alternative opinion on the significance of the emails and the effect of the Matsack nominee agreement, had he been allowed to testify with reference to specific documents. Yet it is for the jury, not Wylie, to apply the law to the facts, and it was not improper for the Trustee's counsel to urge in closing arguments that the jury apply

---

[18] Doc. #605 at 80–81 (Tr. 2776–77).
[19] Doc. #511 at 32, 35.
[20] *Id.* at 3, 7.
[21] Doc. #598 at 39 (Tr. 1931).
[22] *Id.* at 53 (Tr. 1945).
[23] Doc. #605 at 85–86 (Tr. 2781–82).

8

the law or construe the facts in a manner favorable to his client. Therefore, the Trustee's counsel's summations about the Matsack nominee agreement do not provide a basis for granting a new trial.

Finally, with respect to the Yesreb deed, Killilea takes issue with the Trustee's argument that Dunne's signature on the deed was probative of the fact that he remained the beneficial owner of Walford in his individual capacity until he transferred it to Killilea in March 2013. Specifically, the Trustee argued that "[i]f this wasn't true, he never would have signed the [Yesreb] deed."[24] Killilea asserts that the argument was improper because Wylie, had he been allowed, would have testified that there were other reasons Dunne's signature might have appeared on the Yesreb deed.[25] But again, it is uncontroversial that an attorney may use closing argument as an opportunity to marshal the evidence and present it to the jury in the light most favorable to their client. *See, e.g.*, Larsen, Navigating the Federal Trial § 12:1 (2021 ed.); *see also* 4 Lane, Goldstein Trial Technique § 23:6 (3d ed.) ("As long as the argument has an evidentiary basis or may be reasonably inferred from the evidence, it is proper."). The Trustee's closing arguments were not improper, let alone prejudicial.

Killilea's final argument with respect to Walford is that the Court's jury instructions were inadequate. She does not point to any allegedly erroneous instruction, but she complains that after precluding Wylie from testifying with reference to the relevant documents and facts, the Court had a duty to "more fully and accurately instruct[]" the jury on Irish conveyancing law.[26]

---

[24] *Id.* at 87 (Tr. 2783).
[25] Doc. #706 at 18; *see also* Doc. #385-1 at 24–25 (Professor Wylie's expert report); Doc. #440 at 7 (summary of Wylie's expected testimony).
[26] Doc. #706 at 19.

"A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Lore*, 670 F.3d at 156. The movant's burden is "especially heavy" where she points to no specifically erroneous instruction, since "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Moreover, because Killilea has failed to preserve her argument by objecting to the jury instructions in a timely manner, I will review the jury instructions for plain error and grant relief only if the purported error has affected the party's substantial rights. *See* Fed. R. Civ. P. 51(d)(2); *see also Benson v. Family Dollar Operations, Inc.*, 755 Fed. App'x 52, 58 (2d Cir. 2018).

Killilea has shown no error in the jury instructions, much less one that affects her substantial rights. She complains that the instructions "did not give the jury any guidance on the documents about which Wylie was precluded from testifying" and that instead the instructions "merely summarized a couple of basic points of Irish law . . . and did not relate those general principles to the facts or documents that came into evidence."[27] Killilea did not object at the time to any such lack of guidance. And in so arguing, Killilea misunderstands the role of the Court and that of the jury. The Court's role is to instruct the jury on the principles of applicable law, and as long as facts remain in dispute, it is for the jury to decide the facts. A court is not obliged to tailor the jury instructions so that they marshal the evidence in one party's favor.

In sum, Killilea has demonstrated neither error nor prejudice in relation to the Court's limitation on Wylie's testimony, the Trustee's closing arguments, or the Court's jury instructions. I will deny her motion for a new trial on the Walford counts.

---

[27] *Id.* at 20.

### *North Wall Quay*

Pursuant to Rule 50(b), Killilea renews her prior Rule 50(a) motion and requests either judgment as a matter of law or a new trial on Counts 3 and 4. She argues that the Court should grant post-verdict relief on Counts 3 and 4 because, due to the fact that the property at 81 North Wall Quay was formally owned by an entity known as Page Inns, the Trustee did not have standing to avoid the property's transfer, and no reasonable jury could find that Dunne fraudulently transferred the property to Killilea.[28] Because I conclude that Killilea is not entitled to relief even under the "lower" standard for a new trial, *see Jennings*, 263 F. Supp. 3d at 405, I need not separately consider Killilea's request for judgment as a matter of law.

Killilea's arguments with respect to Counts 3 and 4 are materially identical to those already raised by Dunne and resolved in the Omnibus Ruling. There, I noted that "Dunne undisputedly had an interest in North Wall Quay, even if it was formally owned by Page Inns Limited," and "[t]he jury could have reasonably concluded that Killilea was liable for damages for the transfer because Dunne transferred the property to her company, supporting an inference that Dunne did so for her benefit, and she in fact realized the benefit." 2021 WL 3012678, at *19. Killilea makes no substantial showing why this was wrong.

I therefore conclude that the jury's verdicts on Counts 3 and 4 were not seriously erroneous and would not result in a miscarriage of justice. Accordingly, for the reasons already detailed in my Omnibus Ruling, Killilea is not entitled to judgment as a matter of law or a new trial with respect to the North Wall Quay transfer.

### *Lucy Partnership payments*

---

[28] *Id.* at 20–23.

Killilea similarly seeks either judgment as a matter of law or a new trial on Counts 10 and 11, both concerning the Lucy Partnership payments. In support of her motion, she argues that the Lucy Partnership payments were made not to defraud Dunne's creditors but rather to perform his obligations to Killilea under a 2010 Swiss family law order concerning the couple's separation agreement.[29] This is the same argument that I considered and rejected in the Omnibus Ruling, in part based on the evidence that the Swiss court order was nonbinding. *See* 2021 WL 3012678, at *20–21. Killilea now argues that only *parts* of the Swiss court order—specifically, those related to "equity planning and settlement of the marital property"—were nonbinding, and that the Lucy Partnership income relates to portions of the order on monthly and annual spousal maintenance, which were "explicitly enforceable."[30]

As I noted in my Omnibus Ruling, the Trustee introduced substantial evidence to show that the Swiss court order that Dunne and Killilea relied on was not binding. The Swiss court order was placed into evidence,[31] and the jury was free to come to its own conclusions on the significance of that document.

Moreover, the jury could have reasonably reached its verdict even without finding that the Swiss order was nonbinding. The jury could have relied, for example, on the evidence adduced by the Trustee showing that the Lucy partnership payments began *before* the Swiss court order came into effect. *See* 2021 WL 3012678, at *21. Accordingly, I cannot conclude—even under the lower standard for a new trial—that the jury reached a seriously erroneous result,

---

[29] *Id.* at 23–24.
[30] *Id.* at 24.
[31] *See* Pl. Ex. 235.

or that the jury's verdicts on Counts 10 and 11 would amount to a miscarriage of justice. I will deny post-verdict relief on Counts 10 and 11.

### *Credit Suisse transfers*

Finally, Killilea argues that the Court should grant a new trial on Count 21 because "the evidence refutes" the jury's conclusion that Dunne intentionally fraudulently transferred €3,015,000 from the couple's joint Credit Suisse account to Killilea's individual account on October 28, 2008.[32] In support of her motion, Killilea rehashes Dunne's prior arguments that there was no transfer because Killilea already owned the money and because on October 28, 2008, she merely transferred her own money from one account to another.[33] As discussed in the Omnibus Ruling, however, the Trustee adduced substantial evidence from which a reasonable jury could conclude that the funds in question initially belonged to Dunne, and that the transfer on October 28, 2008 was the culmination of efforts to hinder, delay, or defraud Dunne's creditors. *See* 2021 WL 3012678, at *21–22.

None of Killilea's remaining arguments are grounds to alter my conclusion that the jury's verdict with respect to the Credit Suisse transfers was neither seriously erroneous nor a miscarriage of justice. Accordingly, I will deny Killilea's motion for a new trial with respect to Count 21.

### CONCLUSION

For the reasons set forth above, the Court DENIES Killilea's post-trial motion (Doc. #705).

---

[32] Doc. #706 at 25–26.
[33] *Compare id.* at 25 *with* Doc. #571 at 30.

It is so ordered.

Dated at New Haven this 8th day of February 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge